Johnnie D. BROWN et al., Plaintiffs,

v.

James T. LYNN et al., Defendants.

No. 73 C 334.

United States District Court, N. D. Illinois, E. D.

Feb. 12, 1975.

Seymour Mansfield, William P. Wilen, Marthe Purmal, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs.

James R. Thompson, U.S. Atty., Robert B. Schaefer, Asst. U.S. Atty., George A. Platz, III, Tomas M. Russell, Sidley & Austin, Elmer M. Walsh, Jr., H. Barringer Pusch, Thomas C. Strachen, III,

Schumacher, Gilmore, Staub, Wade & Jones, Ronald J. Guild, Neal R. Toback, Teitelbaum, Wolfberg & Guild, Shapiro, Kreisman & Epstein, Barry M. Fisher, Fisher & Fisher, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

On October 11, 1974, this court issued an opinion on motions to dismiss filed by the Department of Housing and Urban Development (hereinafter HUD) and the mortgagee defendants, holding that, although jurisdiction was proper over all defendants, only the claim charging HUD with violation of its mandate to provide a decent home and suitable living environment for every American family constituted a valid cause of action. We specifically rejected plaintiffs' contention in Count IV of their complaint that the mortgagee defendants had violated legally binding federal regulations by failing to pursue the prescribed alternatives to foreclosure outlined in the HUD Guidebook, FHA G 4015.9. We stated in our opinion that:

> . . . the HUD guidelines upon which the plaintiffs have particularly relied as a source for the "regulatory" scheme underlying the programs, have not been issued pursuant to the Administrative Procedure Act. As such, they only contain statements of policy and not regulations, per se, having the force and effect of law. Faggins v. Kassler & Co., 72 C 125 (N.D. Ill., July 26, 1972). Statements of policy have no binding effect upon the mortgagees, FHA v. Morris Plan Co., 211 F.2d 756 (9th Cir. 1954), and are unenforceable in the courts. *Faggins*, *supra*. The guidelines, in their present form, therefore, cannot be used to require the mortgagees to pursue the alternatives listed therein, and, accordingly, do not give rise to a claim of a duty owed or a remedy. (385 F.Supp. at 998).

On December 6, 1974, the plaintiffs filed a motion for clarification and re-consideration of this particular aspect of our opinion. Their challenge focused upon our holding that, before the Guidebook could be considered rules and regulations, and consequently binding upon the mortgagees, they had to be published in the Federal Register. Plaintiffs argue that, while it is true that § 553(b) of the Administrative Procedure Act (APA), requires notice of proposed regulations to be published in the Federal Register, § 553(a)(2) excludes "matter[s] relating to agency management or personnel or to public property, loans, grants, benefits, or contracts" from these notice requirements. Plaintiffs contend that the HUD Guide (FHA G 4015.9), which was the subject matter of plaintiffs' original complaint and our October 11, 1974 opinion, as well as the HUD Handbook (4191.1), which was issued in April, 1974, to supercede the Guide, are covered by the § 553(a)(2) exemption. In support, they rely principally upon Brown v. Housing Authority of City of Milwaukee, 471 F.2d 63 (7th Cir. 1972) and Housing Authority of City of Omaha, Nebraska v. United States Housing Authority, 468 F.2d 1 (8th Cir. 1972), which held the notice provisions of the APA inapplicable to circulars issued by HUD in conjunction with other federal housing programs to the extent that the agency has a proprietary interest in the property, funds, or contracts involved. Citing language from these decisions, plaintiffs argue that the Guide and Handbook "effectuate the government's stewardship" over the housing programs by setting forth obligations and sanctions arising out of the contract between HUD and the mortgagees, and that these publications should likewise be exempt under § 553(a)(2).

The plaintiffs further contend that, when a document is not published in the Federal Register, "whether it is a regulation . . . depend[s] in part on its contents and in part on agency intent ascertained by extrinsic evidence." Piccone v. United States, 407 F.2d 866, 186 Ct.Cl. 752 (Ct.Cl.1969) (Judge Nichols,

concurring). Where basic policies and procedures are couched in mandatory terms such as "shall," "will," and "must," they suggest an underlying agency intention to make the rules binding. The plaintiffs submit that the later HUD Handbook replaced the permissive language of the Guide with more precise, obligatory language.

They particularly point to statements in the Handbook which provide:

> It is to be noted that the Handbook sets forth, in considerable detail, procedural standards to be observed by those servicing HUD insured mortgages. (Introduction)

> Mortgagees with poor servicing practices will be identified and the failure of any mortgagee to satisfactorily correct any servicing deficiencies in HUD-insured mortgages in accordance with the provisions of this Handbook, may result in suspension or termination of the lender's acceptability as a HUD-approved mortgagee. (page 1)

> Foreclosures of a mortgage shall be undertaken only after the mortgagee or servicer has assured itself that the case has been handled in full accordance with the servicing practices outlined herein. (p. 44)

> Any of the relief measures discussed in the Chapter may be used and mortgagees are expected to refrain from foreclosure where it is determined that the case may be salvaged through the use of one or more procedures. (p. 47)

Plaintiffs contend that the clear import of such language, especially when compared with the precatory language of the Guide, evidences an intention by HUD to make the sections dealing with alternatives to quick foreclosures binding upon mortgagees. While we earlier stressed that HUD should have made these sections legally binding, and that their failure to do so has subverted the 203 and 235 low income housing programs, we are not persuaded by plaintiff's argument that either HUD's Guide or Handbook was intended to have the power and effect of law, and accordingly we deny plaintiffs' motion for reconsideration.

We do not reach the merits of plaintiffs' challenge to the APA publication requirement, for even if the Guide or Handbook were arguably exempt under § 553(a)(2), HUD would still be bound by its own regulations controlling publication. It is a fundamental principle of administrative law that "when an administrative agency promulgates rules to govern its proceedings, these rules must be scrupulously observed . . . even when the defined procedures are 'generous beyond the requirements that bind such agency'." Mandina v. Lynn, 357 F.Supp. 269 (W.D.Mo.1973). See also, Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); United States v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). HUD's own "mini APA," 24 C.F.R. 10, provides in § 10.5 that HUD:

> . . . will, although not required to do so, voluntarily publish in the Federal Register its rules and regulations . . . at least 30 days before their effective date to afford interested persons an opportunity to participate in the formulation of the final language of such rules and regulations through the submission of written data, views or arguments . . . The Department will not make such advance publication where the Secretary has determined in the particular case or class of cases that such advance publication and notice and public procedure are impracticable, unnecessary, or contrary to public interest.

The Secretary of HUD made no preliminary finding of impracticality, lack of necessity, or public concern before issuing the Handbook, nor has there been any allegation or showing by the

plaintiff that an extraordinary situation existed which would have justified HUD bypassing its own notice requirements. In the absence of impracticality or emergency, HUD's failure to publish the Guide or Handbook in the Federal Register violates the provisions of § 10.5, and consequently these publications cannot constitute rules or regulations. They are thus not legally binding upon the mortgagees and are not enforceable in a lawsuit such as this seeking monetary damages and injunctive relief.

█ In addition, although there is some ambiguity in the apparent forcefulness of certain language in the recently issued HUD Handbook, the express purpose of the Handbook is clearly articulated in the Introduction:

> The purpose of this Handbook is to provide procedural information and policy guidelines for use by HUD approved mortgagees in serving HUD insured mortgages.

This statement leaves little doubt that the Handbook contains flexible policies and procedures which mortgagees preferably should follow when servicing 203 and 235 mortgages. Recommendations as to the treatment of low income mortgagors are not legally binding regulations.

HUD's intention not to make the Handbook obligatory is further reflected in an affidavit submitted by Fred W. Pfaender, Director of Loan Management for HUD, in the case of Young v. Federal National Mortgage Association, No. C74–1756A (N.D.Ga.). Pfaender, who has authority for establishing and implementing procedures to monitor HUD approved mortgagees in their mortgage servicing activities and for initiating appropriate administrative actions in the event an approved mortgagee fails to conform with Department regulations, and who was responsible for publishing the HUD Handbook, stated that:

> The Department's intention in issuing Handbook 4191.1 was to provide HUD approved mortgagees with flexible guidelines to assist them in servicing HUD insured single family mortgages. This intent was expressed on page one of the Handbook by citing its purpose, 'to provide procedural information and policy guidelines for use by HUD approved mortgagees in servicing HUD insured mortgages.'

The Handbook is designed for use both as a guide and as an advisory interpretation of HUD's regulatory requirement that mortgagees must service insured mortgages 'in accordance with acceptable mortgage practices of prudent lending institutions.' If a Mortgagee fails to abide by the mortgage servicing guidelines set out in Handbook 4191.1, my office will investigate, and if circumstances warrant, initiate appropriate administrative action.

> The Department does not intend to create, nor to imply the creation of, vested rights in private citizens based on a mortgagee's non-compliance with the advisory guidelines contained in Handbook 4191.1, nor to imply that the various forbearance provisions discussed in Handbook 4191.1 must be followed by mortgagees as conditions precedent to maintaining an action to foreclose an insured mortgage.

In light of such unequivocal testimony, plus HUD's purposeful avoidance of publishing the Handbook in the Federal Register, plaintiffs' suggestion that HUD intended the Handbook to be binding has little merit. Accordingly, plaintiffs' motion to reconsider our order dismissing Count IV of plaintiffs' complaint is denied.

The decision does not limit state or federal foreclosure courts from exercising their equity powers by refusing to grant foreclosures where mortgagees have flagrantly disregarded the forbearance provisions of the HUD Handbook. Nor should our opinions be construed as carte blanche for mortgagees to act with abandon to the limits of the

elusive "prudent lender" standard. Our consideration of the enforceability of the HUD Handbook is limited solely to plaintiffs' instant action for monetary damages and injunctive relief for alleged violations of the non-binding guidelines. Since the Handbook does not impose legal obligations upon the mortgagees, we find no basis for such an action against them. Our opinion goes no further.

That holding, however, does not preclude foreclosure courts from allowing mortgagors to raise non-compliance with the Handbook as a defense to a "quick" foreclosure. Somewhat analogous to the situation where HUD could suspend or terminate mortgagees for poor servicing practices, even though such conduct would not give rise to a lawsuit, so too, a court of equity may restrict a mortgagee who has not, within the reasonable expectations of good faith and fair dealing, followed or applied the guidelines.

On the theory that the guidelines are sensible, equitable standards of conduct, consistent with, and issued in furtherance of, the national housing goals, foreclosure courts can, and in appropriate instances should, direct the parties to pursue and exhaust the alternatives to foreclosure enumerated in the Handbook. Merely rubber-stamping mortgagees' foreclosure actions, when they have acted barely within the formal legal bounds of these loosely defined housing programs, will contribute further to the needless loss of homes and to the creation of virtual ghost areas within our inner cities. Foreclosure courts need not woodenly perpetuate the national tragedy surrounding quick foreclosures to which we referred in our earlier opinion, but, where appropriate, they should require adherence to the policies and procedures prescribed by the Handbook. Such an approach is not inconsistent with our rulings herein.

An order consistent with the foregoing will enter.