Federal National Mortgage Association v. Ayala

*Gerald P. Ginley*, for plaintiff.
*Stanley J. Shapiro*, for defendants.

GUARINO, *J.*, September 12, 1978—This matter is before me on preliminary objections to complaint in mortgage foreclosure in the nature of a demurrer, a motion for more specific pleading, and a petition raising the question of jurisdiction: Pa.R.C.P. 1017(b)(1), (b)(4). Basically, the objections seek dismissal of the complaint for failure to comply with the rules and regulations governing mortgage foreclosure of the Department of Housing and Urban Development (HUD), and failure to comply with the Act of January 30, 1974, P.L. 13, sec. 403, 41 P.S. §403.

The pertinent facts bearing on the issues thus raised are as follows: On December 21, 1973, defendants executed and delivered a mortgage on their residence in favor of plaintiff's assignor. On March 29, 1974, the mortgage was assigned to plaintiff. On August 10, 1977, defendants were given written notice of intention to foreclose and accelerate for failure to make monthly installment payments. The present complaint in mortgage foreclosure was filed January 18, 1978.

It is not disputed that plaintiff has not complied with the rules and regulations issued by HUD, and that the mortgage, the subject of this action in foreclosure, is a mortgage which was insured by that agency. Neither in its memorandum submitted in response to the preliminary objections nor during the scheduled oral argument did plaintiff object to defendants' assertion that the subject mortgage was one insured by HUD. Accordingly, although ordinarily we would not take notice of a fact not of record, for the purpose of understanding

and discussing defendants' contention, we will assume that the mortgage, the subject of this foreclosure, is an insured mortgage.

In support of the contention that compliance with the requirements of HUD policy and regulations is a sine qua non for filing and maintaining a cause of action in foreclosure, defendants refer us to the HUD Handbook on Administration, 4191.1, dated February, 1977. It is apparent from this document that it is the policy of HUD, the agency empowered to service and administer insured mortgages, to discourage as much as possible foreclosing on insured mortgages. [Chapters 1, 7, 8]. In accordance with this, HUD has recently agreed to implement a program under which it will take an assignment of a single family insured mortgage which is in default where a bona fide hardship exists.[1]

A careful reading of these references, however, does not warrant the conclusion that plaintiff should have first offered the mortgage to HUD, before commencing foreclosure proceedings. The purpose of the Handbook is to announce HUD's policy and provide information and guidelines for administration of HUD approved mortgages. Noncompliance by participating mortgagees may result in withdrawal of HUD's approval for participation in the program: HUD Handbook, Sec. 126, Sub. (f)(1). See also Griffin v. Harris, 571 F. 2d 767 (3d Cir. 1978); Brown v. Lynn, 385 F. Supp. 986 (N.D. Ill. 1974). But, it does not establish a precondition for commencing foreclosure in a court having jurisdiction of the parties and the subject matter. In Griffin, where the same issue was presented,

1. Defendants' brief, p. 6; Ferrell v. Hills, formerly reported sub nom. Brown v. Lynn, No. 73-C-334 (N.D. Ill), 385 F. Supp. 986 (N.D. Ill. 1974), and 392 F. Supp. 559 (N.D. Ill. 1975).

the court quoted and reported with approval the director of loan management of HUD to the effect that the regulations did not govern private vested rights and that the various forbearance provisions did not have to be followed by mortgagees as a condition precedent to maintaining an action in foreclosure: 571 F. 2d at 771.

We turn now to the determination of whether the Act of January 30, 1974, P.L. 13, 41 P.S. §401 et seq., or, more specifically, those sections which provide for notice of intention to foreclose, are satisfied by plaintiff's notice of August 20, 1974. Section 403 of the act, 41 P.S. §403, provides that "[b]efore any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, [or] commence any legal action including mortgage foreclosure . . ., such person shall give . . . notice of such intention at least thirty days in advance. . . ." The notice is to "be in writing" and ". . . shall clearly and conspicuously state:

"(c)(1) The particular obligation or real estate security interest; (2) The nature of the default claimed; (3) The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance including what sum of money, if any, must be tendered to cure the default; (4) The time within which the debtor must cure the default; (5) The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and (6) The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default."

We find no ambiguity in the notice of August 10, 1977. The notice was in compliance with the act. It

clearly states the default and its extent; how it could be cured, and all the various avenues of relief open to defendants. In separate paragraphs and in lucid words, it informed defendants that they were delinquent in their installments [Par. 2], that they could cure the default by the payment of the sum total of the installments due plus interest and late charges [Par. 3], that unless they paid that sum, the lender intended to accelerate the installments and demand the full amount of the mortgage, together with interest and costs and attorney's fee [Par. 4], that defendants could cure the default and prevent foreclosure up to one and one half hours before bidding started at the sheriff sale, "by paying the amount *then due*" [Par. 5], and that they had the right to transfer the property subject to mortgage or refinance it, but would have to pay the amount *"then due"* under said mortgage obligations [Par. 7].

Defendants take the position that the wording "then due" employed by plaintiff in paragraphs 5 and 7 of the notice is inappropriate; that the lender should have employed the exact words of the statute: instead of "then due" the words should have been "all sums which would have been due at the time of payment or tender in the absence of default and the exercise of an acceleration clause . . . ." 41 P.S. §404(b). There is no directive in the act, and we do not believe that the legislature intended that the notice be in the language of the act. In fact, the language of the act is generic and intended to instruct and to direct. The specifics are left to the person required to give the notice. A notice is adequate if it contains all the information required by the act and it is clearly and conspicuously stated. In stark contrast to the language of the statute,

which defendants say should have been used, the language of the notice herein was simple, plain and more easily understood by the layperson. We are not persuaded by defendants' argument that the notice must detail the amount of attorney's fees due at each stage of the foreclosure proceeding. There is no such requirement in subsection (c) of section 403.

The word "conspicuous" is nowhere defined in the act. However, the Uniform Commercial Code provides us with a legally acceptable definition for conspicuous writing which is instructive and equally applicable to the requirement of the notice of intention to foreclose and accelerate. Turning to section 1-201(10) of the Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12A P.S. §1-201(10), we find:

"(10) 'Conspicuous': A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous.' Whether a term or clause is 'conspicuous,' or not is for decision by the court."

As can be readily ascertained by this definition, the term "conspicuous" is relative—a particular writing is conspicuous or not depending on the nature of the writing. Where a series of matters are of equal importance, there is no necessity for contrast in the lettering used. Here, the notice was printed with letters the size of the type used in this opinion and clearly legible. There is no claim made that it

was illegible either in whole or in its parts. I find it to be in compliance.

Since defendants have rested their claim for dismissal on failure of plaintiff to comply with HUD regulations and with Act No. 6, 1974, and since we have determined that there was no necessity to comply with HUD regulations, and that plaintiff did comply with notice required of Act No. 6, and that the notice was adequate, we deny defendants' preliminary objections. In doing so, we do not reach the question of whether compliance with Act No. 6 is a requisite to this court's jurisdiction over actions in mortgage foreclosures, and whether such a complaint is demurrable. We note, however, that this complaint sets forth all the essential factual allegations prescribed by Pa.R.C.P. 1147,[2] which governs the contents of complaints in foreclosure and that the rule makes no mention of the requirement that plaintiff plead that he has given notice under Act No. 6. In a note to the rule, the drafters' suggestion that "if a mortgage is a residential mortgage under Act No. 6 of 1974, 41 P.S. §10, the complaint should set forth an averment of compliance with the provisions of Section 403 of Act No. 6, 41 P.S. §403," was held to be precatory. Ministers and Missionaries Benefit Board of the American Baptist Churches v. Goldsworthy, 253, Pa. Superior Ct. 321, 385 A. 2d

---

2. Rule 1147. "The plaintiff shall set forth in the complaint: (1) the parties to and the date of the mortgage, and of any assignments, and a statement of the place of record of the mortgage and assignments; (2) a description of the land subject to the mortgage; (3) the names, addresses and interest of the defendants in the action and that the present real owner is unknown if he is not made a party; (4) a specific averment of default; (5) an itemized statement of the amount due; and (6) a demand for judgment for the amount due."

358 (1978); See also, General Electric Credit Corp. v. Slawek, 2 PICO 93 (1978), The Legal Intelligencer, May 5, 1978, p. 1.

## ORDER

For the foregoing reasons, defendants' preliminary objections are denied. Defendants will make answer to complaint within 20 days from date of this opinion.