UNITED STATES of America,
Plaintiff-Appellee,

v.

Lebron HARVEY, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Sherman FARLEY and Audrey Faye
Farley, Defendants-Appellants.

No. 80–7547.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Oct. 15, 1981.

Myron N. Kramer, and Donald M. Dotson, Atlanta, Ga., for Sherman Farley .& Audrey Faye Farley.

James E. Baker, U. S. Atty., Barbara A. Harris, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before HILL and VANCE, Circuit Judges, and LYNNE **, District Judge.

JAMES C. HILL, Circuit Judge:

Appellants Lebron Harvey and Sherman and Audrey Farley were defendants in consolidated proceedings in the district court brought by the United States to foreclose on deeds to secure debt executed in favor of the Veterans Administration. The appellants raised as a defense the failure of the VA properly to service their accounts in accordance with VA loan servicing manual M–26–3 and sought to enjoin the foreclosure. In the Harvey case the government simultaneously moved for summary judgment and to dismiss the counterclaim seeking an injunction. The government also filed a motion for judgment on the pleadings against the Farleys. Resolving these motions in the government's favor, the dis-

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

** District Judge of the Northern District of Alabama, sitting by designation.

trict court concluded that the provisions of the VA manual were not mandatory and therefore did not grant the appellants a right to bar or enjoin foreclosure. Accordingly, a judgment of foreclosure and sale was entered against both appellant Harvey and the Farleys on May 22, 1980. From this judgment appeal has been taken. For the reasons set forth below, we affirm.

## I. FACTS

On September 17, 1976, Lebron Harvey purchased a home in Decatur, Georgia from the Veterans Administration under its vendee loan program. Harvey executed both a promissory note in favor of the VA and a Deed to Secure Debt, which provided for acceleration of the indebtedness and a power of sale without notice in the event the debtor failed to make the agreed payments. The Harvey account went into default in November, 1977. In January, 1978 a VA employee made a personal visit to the Harvey home, but no payment was received until March. In spite of three letters from the VA to appellant Harvey about his growing default, and another attempted personal visit, appellant did not respond to the VA's contacts and forwarded only two more payments. When the Harvey account was five months in arrears, the matter was referred to the United States Attorney for foreclosure, and foreclosure proceedings were instituted[1] when the account was seven months past due.

The facts in the Farley case are similar. The Farleys purchased a VA home and executed a promissory note and deed to secure debt in April, 1978. Their first payment was late, as was their second payment, which was made initially with a check that bounced. In August, 1978, in response to a note left at their home by a VA representa-tive, the Farleys contacted the VA about their default and made arrangements to bring their account current. Contrary to the arrangement, however, the August payment was not received until November. Meanwhile, the VA sent the Farleys a letter about their problem in making payments, to which the Farleys did not respond. In mid-November, the check for the October payment was not honored by the Farleys' bank. In February, 1979, when the account was five months in arrears and in response to a VA letter advising them of the institution of foreclosure proceedings, the Farleys offered to pay half of the accrued arrearage. The VA refused the proposed plan.[2]

The primary issue presented by this joint appeal is whether the servicing provisions of the VA loan servicing manual[3] create a right in the borrower/mortgagor that can be enforced in defense to a foreclosure action or in an action to enjoin foreclosure. We hold that they do not.

## II. THE VA MANUAL DOES NOT CREATE SUBSTANTIVE RIGHTS IN THE BORROWER/MORTGAGOR

■ The VA manual is an internal agency publication issued to employees engaged in loan servicing operations to provide procedural information and policy guidelines. Paragraph 2.20(e) of the manual states: "After the reasons for default have been determined, indulgence may be extended for a reasonable time to a worthy borrower who is unable immediately to begin the liquidation of his arrearage." On the basis of this and other provisions regarding field servicing, appellants claim that the VA was under an obligation running in favor of appellants to extend, reamortize, or forbear on their loans before foreclosing and that the VA thus failed to fulfill a mandatory

---

1. The VA elected to pursue judicial foreclosure rather than to exercise its power of sale because of pending litigation which questions the constitutionality of the power of sale clause under the fifth amendment due process clause.

2. Counsel for plaintiff and defendant considered termination of foreclosure proceedings upon payment of one-half the arrearage and cure of the remaining delinquency within six months. The Farleys rejected this proposal.

3. The manual's full title is Veterans Administration Loan Guaranty Operation for Regional Offices—Loan Management and Servicing Policies, Procedures, and Methods, M–26–3. Hereinafter we will refer to it simply as the VA manual or loan servicing manual.

condition precedent to foreclosure. To prevail on this argument, appellants must establish that the VA manual imposes a foreclosure avoidance duty on the VA and thereby creates a correlative right in the mortgagor to this performance.

At the outset we note the clearly permissive rather than mandatory language of the manual's instructions. On its face the manual does not purport to create a binding obligation. Indeed, the manual states in paragraph 2.18(c) that it sets forth only "preferable" provisions for servicing defaulted loans and recognizes that "strict compliance with these procedures may be impracticable or even impossible under certain conditions." *See Brown v. Lynn,* 392 F.Supp. 559, 562 (N.D.Ill.1975) (holding non-mandatory the foreclosure avoidance and servicing provisions of HUD guidebook because of permissive language, indicating lack of agency intent to make provisions binding, and failure formally to promulgate guidebook as agency regulation).[4]

■ Furthermore, "[i]n order for a regulation to have the 'force and effect of law,' it must have certain substantive characteristics and be the product of certain procedural requisites." *Chrysler Corp. v. Brown,* 441 U.S. 281, 301, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979). More specifically, the regulation must be a substantive or legislative-type rule—*i. e.* one "affecting individual obligations," *Morton v. Ruiz,* 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1971)—which has been issued by the agency pursuant to statutory authority and promulgated in accordance with the procedural requirements of the Administrative Procedure Act. *Chrysler Corp. v. Brown,* 441 U.S. at 302–303, 99 S.Ct. at 1718.

Appellants have failed to convince us that the VA manual has the "force and effect of law." First, it is questionable that the loan servicing provisions can be characterized as a substantive rule; they more aptly fall into the category of general statement of agency policy. *See* 5 U.S.C. § 553(d) (1976). Moreover, appellants have not identified any statute directing the VA to implement a "foreclosure avoidance" duty by legislative-type regulations, nor have they established that the manual was promulgated or required to be promulgated using the notice and comment procedures of the Administrative Procedure Act. *See Charles v. Krauss Co., Ltd.,* 572 F.2d 544, 549 (5th Cir. 1978); *Gatter v. Cleland,* 512 F.Supp. 207 (E.D.Pa. 1981) (VA manual and circulars regarding VA guaranteed loan program). Indeed, appellants concede, Brief of Appellants at 10, that the manual's provisions are not formal agency regulations.[5]

---

4. The district court in *Brown* indicated that, in exercising its equitable powers in a foreclosure proceeding, a court might take into account the agency's flagrant disregard of even non-binding internal agency pronouncements. 392 F.Supp. at 562. Our alternative holding, *infra,* that the VA substantially complied with the loan servicing provisions disposes of this argument.

5. The cases relied on by appellants to support the binding nature of the loan servicing provisions are either inapposite or distinguishable. In *Pacific Molasses Co. v. F.T.C.,* 356 F.2d 386 (5th Cir. 1966), this court held that the FTC's failure to comply with its Rules of Practice as promulgated in the Code of Federal Regulations constituted a denial of administrative due process. Unlike the rules at issue in *Pacific Molasses,* the servicing provisions in question here were not published as agency regulations in the Code of Federal Regulations nor are they rules of procedure issued by the agency to govern administrative hearings before it.

*Alamo Express, Inc. v. United States,* 613 F.2d 96 (5th Cir. 1980), also cited by appellants, involved a longstanding practice by the ICC which, although not formalized as official agency practice, afforded existing licensed carriers the procedural benefit of commenting on a proposed grant of emergency authority to a new carrier to use the same route. The court held that elimination of this practice violated the Administrative Procedure Act. First, we note that unlike the provisions in question here, the ICC notification practice did not allow any discretion or judgment tailored to the individual situation. Notice was uniformly given. In addition, appellants here cannot claim the same reliance on the VA servicing provisions as that exercised by the existing carriers with respect to the ICC practice. Nowhere do appellants state that they were even aware of the internal VA manual when they executed the note and deed. Furthermore, any reliance notwithstanding, our conclusion, *infra,* that the VA extended reasonable indulgence and properly serviced these defaulted loans precludes any support found in *Alamo.* Finally, appellants herein do not claim that, as in *Alamo,* the agency has violated the APA.

In the context of both VA loan servicing provisions and other agencies' internal operating policies, other courts have likewise refused to give such internal policy pronouncements the force and effect of law. In holding that the VA's decision not to refund a guaranteed loan was an action committed to agency discretion and therefore not subject to judicial review, the district court in *Gatter v. Cleland*, 512 F.Supp. 207 (E.D.Pa.1981), concluded that the refunding provisions of the VA manual and circulars did "not possess the necessary characteristics of binding agency law." Likewise, in *Fitzgerald v. Cleland*, 498 F.Supp. 341 (D.Me.1980), *aff'd in part and rev'd in part on other grounds*, 650 F.2d 360 (1st Cir. 1981), another mortgagor's challenge to a VA decision not to refund his defaulted guaranteed loan, the court stated that the VA Regulations Manual "is intended only to assist VA employees in the servicing of a guaranteed loan and is merely a non-enforceable policy pronouncement." *Id.* at 351.[6]

Similarly in *Chasse v. Chasen*, 595 F.2d 59 (1st Cir. 1979), the First Circuit held that it lacked federal question jurisdiction in a suit to enforce a policy pronouncement issued by the Commissioner of Customs. The court cited the lack of statutory authority—either in the statute itself or by implication from legislative history—to create enforceable federal rights by issuance of a policy pronouncement. *Id.* at 62–63. The Third Circuit held a Soil Conservation guide and handbook, similar to the VA manual in question here, to be nonbinding in *Concerned Residents of Buck Hill Falls v. Grant*, 537 F.2d 29 (3d Cir. 1976). It reasoned that "since the Guide and the Handbook are merely internal operating procedures, rather than regulations officially promulgated under the APA or otherwise, they do not prescribe any rule of law binding on the agency." *Id.* at 38. Finally, in *Feldman v. United States Dep't of Housing and Urban Development*, 430 F.Supp. 1324 (E.D.

Pa.1977), and *Brown v. Lynn*, 392 F.Supp. 559 (N.D.Ill.1975), unpublished, internal HUD loan management handbooks were found to be nonbinding, with both courts noting the lack of publication in the Federal Register and lack of agency intent to create mandatory duties.

Having concluded that the loan servicing provisions of the VA manual involved in this case do not have the force and effect of law, we also note that appellants cannot claim that the contractual provisions of the promissory notes or deeds to secure debt condition foreclosure on servicing loans in accordance with the VA manual. The servicing provisions of the manual are not incorporated in either document. Contrary to the appellants' condition precedent argument, the promissory notes state:

> It is agreed that time is of the essence of this contract and that if any deficiency in the payment of any installment under this note is not made good prior to the due date of the next such installment, the holder of this note may, without notice, exercise the option of treating the remainder of the debt due and collectible. Failure to exercise this option shall not constitute a waiver of the right to exercise same in the event of any subsequent default.

The deed to secure debt further provides:

> In the event of default in any of the covenants or conditions of this instrument, the Grantee, at its option, may foreclose this instrument in any Court of competent jurisdiction, and shall be entitled to the immediate appointment of a receiver for the collection of the rents of said premises during the pendency of such foreclosure. This right is cumulative and is not a waiver of the right to advertise and sell under Grantee's advertisement of sale.

In sum, although the VA manual clearly authorizes, and may encourage, the employees to cooperate with defaulting mortga-

---

**6.** To our knowledge only one court has concluded, without articulating its reasons, that the "foreclosure avoidance" rules reflected in VA publications impose mandatory duties on the VA and create enforceable rights in the mortgagor under the guaranteed loan program. *Rank v. Cleland*, 460 F.Supp. 920 (C.D.Cal. 1978). We find it unpersuasive.

gors toward the end that such mortgagors might retain their homes, the manual does not create substantive rights in the mortgagor enforceable in federal court.[7]

## III. THE VA PROPERLY SERVICED APPELLANTS' LOANS.

Alternatively, we observe that even if the VA manual created rights in the appellants and a private right of action could be implied, appellants would not be entitled to relief since the record shows that the VA properly serviced their loans as contemplated by the manual. We thus agree with the district judge's finding that the VA gave appellants every reasonable opportunity to avoid foreclosure.[8] Appellant Harvey did not respond to letters or personal visits from VA personnel. The Harvey account was seven months in arrears when foreclosure commenced, although the VA manual states that reasonable forebearance ordinarily should not be extended beyond three or four months. Similarly, the Farleys repeatedly failed to respond to the VA's inquiries and failed to comply with a plan which they volunteered, and which the VA accepted, to bring their loan current. At the time of foreclosure, the Farley account was five months in arrears.

## IV. CONCLUSION

For the reasons stated above, the judgment of the district court is

AFFIRMED.

7. In light of this conclusion we must also reject appellants' argument that the district judge erred in granting summary judgment and judgment on the pleadings in the government's favor. Furthermore, having concluded that the manual places no binding obligations upon the agency, we find it unnecessary to decide whether such a manual can support an implied private right of action in the borrower.

8. Appellants have protested in their briefs and in oral argument (1) that they were barred in the district court from raising the VA's noncompliance with its manual as an equitable

defense to foreclosure and (2) that this equitable defense is the central issue in their case. First, we find that appellants had the opportunity to, and in fact did, argue in defense that the VA improperly serviced the loans in question. Furthermore, in light of our conclusion that the VA properly serviced their accounts, this "unclean hands" argument is without merit.