**PUEBLO NEIGHBORHOOD HEALTH CENTERS, INC., a Colorado nonprofit corporation, Plaintiff-Appellant,**

**v.**

**The UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, The Bureau of Community Health Services, an agency of the United States Department of Health and Human Services, and Edward D. Martin, Director of the Bureau of Community Health Services, Defendants-Appellees.**

**No. 82–1929.**

United States Court of Appeals, Tenth Circuit.

Aug. 19, 1983.

---

*The Honorable Elbert Parr Tuttle, Senior Circuit Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

Russell E. Vigil of Salazar & Vigil, Denver, Colo. (Robert J. Salazar, Denver, Colo., with him on the brief), for plaintiff-appellant.

Janis E. Chapman, Asst. U.S. Atty., Denver, Colo. (Robert N. Miller, U.S. Atty., Denver, Colo., with her on the brief, Ronald S. Luedemann, Regional Atty., Denver, Colo., and James R. Cage, Asst. Regional Atty., Dept. of Health and Human Services, Kansas City, Mo., of counsel), for defendants-appellees.

Before SETH, Chief Judge, LOGAN, Circuit Judge, and BRATTON,* District Judge.

SETH, Chief Judge.

Pueblo Neighborhood Health Centers (PNHC) has provided community health care to the medically underserved people of Pueblo for a number of years. From 1977 to early 1982, PNHC received federal funding. The final grant award of 1981 stated that there was "no future commitment" of

---

* Honorable Howard C. Bratton, United States District Judge for the District of New Mexico, sitting by designation.

grant monies to PNHC. Consequently, PNHC submitted a new grant application, competitive with those of other similar community health centers, requesting more money. The grant was disapproved and PNHC was notified that federal funds would not be awarded. PNHC went to district court to obtain a preliminary injunction to prevent the withholding of federal funds. The injunction was denied, and a request for a temporary restraining order pending appeal was also denied. From both these orders PNHC appeals.

PNHC makes three arguments. First, it argues that it had a statutory right to funding under 42 U.S.C. §§ 300y–300y–11. This statute, enacted as part of P.L. 97–35, contains some phrases that suggest that it is incumbent on the Secretary of Health and Human Services to continue through 1983 at least, grants made to health centers in 1982. For example, 42 U.S.C. § 300y–5(a)(2) provides that such state "shall make grants" to health centers which received grants in 1982, while 42 U.S.C. § 300y–8(a)(1) provides that the Secretary "shall" make such grants in the event that the states fail or refuse to do so. This language is seemingly mandatory and, PNHC argues, taken together with some legislative history indicating a congressional desire to keep intact patient-provider relationships, requires the Secretary to continue funding for PNHC.

■ This reading of the statute is highly selective. When the provisions mentioned above are considered in context and completely it is clear that their thrust is different from that suggested by the appellant. The 300y series appears in the Omnibus Reconciliation Act of 1981, 95 Stat. 357, under the heading "Part C—Primary Care Block Grants." Part C is concerned with the logistical problems surrounding the state administration of health centers hitherto supervised and funded through the federal government. It is intended to smooth any difficulties in the changeover from federal to state. In 1981 U.S.Code and Administrative News 396 at 893, the committee proposing the legislation stated

that it "provides for a just and equitable means of accomplishing the important transition period." This understanding of the purpose of the statute puts the language and legislative history quoted by the appellant in a new light. Congress intended that decisions about which programs should receive funding need not be made *de novo* by the states but rather that federal decisions to award funding be continued for a few years as presumptively correct. Congress' concern in not disrupting patient-provider relationships was expressed because of the threat of disruption raised by the inevitable confusion connected to a change in administration from federal to state government. Nothing in the statute or the legislative history indicates that Congress meant by this Act to withdraw the Secretary's discretion to withhold funding from health centers that have been administratively determined not to need it or not to be the most efficient and inexpensive means of giving care. (*See* 42 U.S.C. § 254c where the Secretary's discretion in this matter is described and established.) The fact that the Secretary's discretionary power continues is demonstrated by 42 U.S.C. § 300y–5 which passes on a similar discretionary review power to those states who choose to exercise their option to take over the administration of the health centers within their borders. Congress clearly did not intend simply to continue all existing health centers. Colorado, in which PNHC is located, has not chosen to exercise its option so that the 300y series may not apply to PNHC at all. Even if the statute does apply, however, the discretionary power in the Secretary to withhold funding where he thinks proper still exists. Thus PNHC was not statutorily entitled to funding.

■ This understanding of the statute answers some of PNHC's second set of arguments as well. PNHC makes several constitutional claims. With regard to this interpretation of the statute, it argues that it leads to a violation of the Equal Protection clause because it results in disparate treatment for state administered health centers from federally administered cen-

ters. This claim overlooks the section of 42 U.S.C. § 300y–5 which permits administrative review of state administered centers. The two classes of health center undergo the same process.

■ Other constitutional claims are equally unavailing. PNHC argues that it had a property or liberty interest in funding which gave rise to a right to a hearing when funding was denied. Because we find no statutory entitlement we cannot find on those grounds that PNHC had any property interest in a new grant. Nor was there a reasonable expectation of continued funding on which a property interest might hang. *But see Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. The final grant stated that the giving of those monies constituted "no future commitment." Testimony of Dr. Richard Rivera, Executive Director of PNHC, R. Vol. IV at 108. PNHC's position that these words were meaningless and that the government has to keep giving money no matter how carelessly its regulations are complied with, makes a mockery of the grant application process and is contrary to the express grant of discretion to the Secretary. 42 U.S.C. § 254c.

We also reject the argument that a refusal of federal funds was such a deep impugnment of PNHC's reputation that a liberty interest was abrogated. No aspersions were cast on the medical care given by PNHC. The most egregious thing that the refusal implies of PNHC is some misadministration of funds. More important to the district court and more present in the testimony was the inadequacy of PNHC's grant application. These failings are not equivalent to the accusations of "dishonesty[,] or immorality" that the Supreme Court said might give rise to a liberty interest in *Board of Regents v. Roth,* 408 U.S. 564 at 573, 92 S.Ct. 2701 at 2707, 33 L.Ed.2d 548. Especially in the present climate of cutbacks in federal spending, we cannot say that a withholding of grant money is an insult to the reputation. Therefore, we hold that PNHC had no property or liberty interest in federal funding.

Finally, PNHC points to a procedural irregularity in the grant application review process. The regional procedure for reviewing a competitive grant application is set forth in a pamphlet called Grant Application Manual. The manual prescribes that each grant application be considered by an objective review committee. As part of a list of qualifications to serve on that committee the manual states:

"1. The independent review group may not include anyone who, on behalf of the Federal Government, performed or is likely to perform any of the following duties for any of the applications ...:

. . . .

"e. serving as Federal Project Officer or otherwise monitoring or evaluating the grantee's programmatic performance; . . . ."

One of the members of the committee which reviewed PNHC's application was a Mr. Joseph Baldi. Mr. Baldi had had dealings with PNHC twice before. In 1977 he was a member of a site evaluation team which tried to eliminate misunderstandings between PNHC and the regional office. In 1979–80 he chaired an objective review committee similar to the one of which the appellant now complains. PNHC argues that, under the provision quoted above, Mr. Baldi was ineligible to serve on the objective review committee. Ineligibility on the part of one of the three members of the committee, PNHC asserts, invalidates the committee's conclusions.

■ For several reasons, we do not find this argument persuasive. First, the status of the Grant Application Manual is not clear from the record. It is labeled an "HHS transmittal" and nothing indicates that it was the product of formal rule-making. It resembles a kind of internal agency publication, frequent in government offices, that are intended to give procedural guidelines only. Such manuals do not have the "force and effect of law." *United States v. Harvey,* 659 F.2d 62 (5th Cir.); *see Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208. Thus, even if the guide-

lines set forth in the manual have been transgressed, no reversal of the agency action is called for.

Second, the governmental agency has presented an interpretation of the manual provision which is reasonable and under which Mr. Baldi's presence on the committee did not violate that provision. The government contends that the prohibition was directed towards "line management." That is to say, the purpose was to exclude people who were directly concerned in the management of a project and who might have an interest in its continuation. This interpretation is supported by the use of "Federal Project Officer" as an example of those who are disqualified. Where an agency interpretation is reasonable, even if it is less likely than some other, it will be followed. *Board of Dir. & O., Forbes Fed. Cr. U. v. National Cr. U. Adm.,* 477 F.2d 777 (10th Cir.); *see Devon Corp. v. Federal Energy Regulatory Com'n,* 662 F.2d 698 (10th Cir.). Because Mr. Baldi was simply an occasional reviewer of the program, rather than line management with something at stake in the continuation or termination of the project, he was not ineligible.

The possibility of prejudice is clearly the evil that the manual provision is intended to avert. Thus PNHC's failure to show that there was prejudice is a third reason for rejecting the position that the procedural irregularity should invalidate the agency action. PNHC has not shown that any constitutional or statutory rights were abrogated by including Mr. Baldi on the committee. (*See United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733, where the court refused to strike evidence gained from an administrative investigation wherein no constitutional or statutory rights were infringed.) Far from adverse feelings, the record suggests that Mr. Baldi was sympathetic to PNHC in his two previous encounters. In the absence of prejudice, Mr. Baldi's membership in the committee cannot be said to warrant a reversal of the agency action. The committee vote was unanimous. The agency was within the "measure of discretion" permitted in administering its own rules. *American Farm*

*Lines v. Black Ball,* 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547.

On each of these arguments we have found as a matter of law that PNHC was not entitled to relief. Accordingly, whether the proper standard for a preliminary injunction is "likelihood of success" or "fair ground for litigation," PNHC could not prevail.

It is the judgment of this court that the judgment of the trial court should be and is hereby AFFIRMED.