756 F.2d 1513
 Rufus W. BRIGHT, Jr., Plaintiff-Appellant,
v.
Robert P. NIMMO, Administrator of Veterans Administration,
American Cyanamid Company, Insurance Company of
North America, and the Georgia Company,
Defendants-Appellees.
 No. 83-8684
Non-Argument Calendar.
 United States Court of Appeals,
Eleventh Circuit.
 April 8, 1985.
 
 Clarence L. Martin, Savannah, Ga., for plaintiff-appellant.
 Melissa S. Mundell, Savannah, Ga., for defendant-appellee R. Nimmo.
 Walter Hartridge, R. Jonathan Hart, Laura M. Christian, Savannah, Ga., for defendants-appellees American Cyanamid & Ins. Co. of N. America.
 Paul W. Painter, Jr., Savannah, Ga., for defendant-appellee The Ga. Co.
 Appeal from the United States District Court for the Southern District of Georgia.
 Before FAY, VANCE and KRAVITCH, Circuit Judges.
 KRAVITCH, Circuit Judge:
 
 
 1
 In this diversity case, plaintiff Rufus W. Bright, Jr. appeals from the grant of a motion for summary judgment in favor of defendants. Plaintiff contends that the district court erroneously held that (1) plaintiff had no cause of action against his employer and its insurer, independent of the remedies provided by the Workers' Compensation Act, O.C.G.A. Secs. 34-9-1 to -367, for their willful failure to pay him income benefits to which he was entitled, and (2) plaintiff had no cause of action against the Veterans Administration and a private lender for their failure to help him avoid foreclosure on his home. We affirm.
 
 I. BACKGROUND
 
 2
 In July, 1981, plaintiff, an employee of American Cyanamid Company ("ACC"), suffered an employee-related injury and filed for Workers' Compensation benefits. Neither ACC nor its insurer, Insurance Company of North America ("ICNA"), began making payments to plaintiff as required by the Workers' Compensation Act ("the Act"), O.C.G.A. Secs. 34-9-1 to -367. Instead, ICNA chose to controvert plaintiff's claim with the Workers' Compensation Board ("the Board"). The notice of controversion was not timely filed.
 
 
 3
 Meanwhile, plaintiff's financial condition deteriorated. In August and September, 1981, plaintiff failed to make the required monthly payments on a loan he had received from Georgia Company ("GC") for the purchase of his home. The loan was secured by a mortgage on the home and had been guaranteed, in part, by the Veterans Administration (Robert P. Nimmo, Administrator, hereinafter "VA"). On September 2, 1981, GC notified plaintiff that his loan payments were delinquent. Plaintiff responded that he would bring his mortgage current as soon as he had enough money, but that he did not know when that might be.
 
 
 4
 On October 7, GC notified plaintiff that foreclosure proceedings were being instituted, that GC would not accept any more monthly payments, and that plaintiff should contact GC's foreclosure committee in order to show cause why the foreclosure should not proceed. Plaintiff did not respond. In late October, plaintiff sent GC a single mortgage payment of $214.24, although the mortgage was then three months in arrears. GC returned the payment and notified plaintiff of the total amount due. A representative from GC visited plaintiff, who stated that he expected to be able to bring his payments current by October 30.
 
 
 5
 On October 22, GC mailed plaintiff a notice of default. On October 28, VA sent plaintiff a letter informing him that the loan was in default and that he should immediately contact his lender. Plaintiff did not answer the letter. GC sent plaintiff a form questionnaire, to which plaintiff responded that he would bring his payments current within three weeks after the hearing on his Workers' Compensation claim, scheduled for November 9.
 
 
 6
 On November 7, plaintiff received a notice of intent to foreclose. On November 10, VA sent plaintiff another letter, this time warning plaintiff about the impending foreclosure and again encouraging plaintiff to contact his lender or VA. According to plaintiff, he called VA, but a VA official failed to return the call.
 
 
 7
 On December 2, an attorney for GC sent plaintiff a registered letter informing him that the entire amount of the loan was accelerated and immediately due. The letter suggested that GC might not foreclose if plaintiff paid the past due payments plus costs. Plaintiff received the letter by December 12.
 
 
 8
 On December 16, the Board found that both ACC and ICNA were required but had failed to pay income benefits to plaintiff. In addition to an award of benefits, the Board awarded plaintiff a fifteen percent statutory penalty and attorney fees pursuant to O.C.G.A. Sec. 34-9-221(e), finding that ACC and ICNA had "without reasonable grounds" failed to comply with the requirements of the Act.
 
 
 9
 Subsequently, on or about December 29, plaintiff responded to GC's letter by mailing to GC a cashier's check and money order totalling $1,268.96. This was substantially less than the accelerated amount then due. GC returned the two checks to plaintiff on January 4, 1982. Plaintiff's home was sold at a foreclosure sale on January 5.
 
 II. DISCUSSION
 
 10
 A. Whether Plaintiff Has a Cause of Action Against ACC and ICNA
 
 
 11
 Plaintiff sued ACC and ICNA, alleging that their "willful and intentional" failure pay him income benefits to which he was entitled caused him to lose his home and suffer marital and other difficulties. The district court ruled that plaintiff had no cause of action against ACC and ICNA, and granted summary judgment in favor of both defendants.
 
 
 12
 On appeal, we determined that this issue presented an important unresolved question of Georgia law: Whether Georgia recognizes an independent cause of action apart from the remedies available under O.C.G.A. Sec. 34-9-221(e) where an employer and/or insurer have intentionally delayed Workers' Compensation payments to which the employee is entitled under the Act and where they have not properly complied with the Act's requirements. We certified this question to the Georgia Supreme Court, which answered the question in the negative. See Bright v. Nimmo, 253 Ga. 378, 320 S.E.2d 365, 368 (1984) (reproduced as Appendix A, infra ). We therefore hold that ACC and ICNA are entitled to judgment as a matter of law, and we affirm the district court's grant of summary judgment in favor of both defendants.
 
 
 13
 B. Whether Plaintiff Has a Cause of Action Against VA and GC
 
 
 14
 Plaintiff also sued VA and GC, seeking legal and equitable relief for "wrongful foreclosure" on the grounds that VA, in concert with GC, "deprived" plaintiff of his property by failing to carry out its duty to help plaintiff avoid foreclosure on his home. The district court ruled that plaintiff had no cause of action against VA and GC, and that plaintiff was not entitled to equitable relief from the foreclosure under Georgia law.
 
 
 15
 On appeal, plaintiff contends that the VA's own manuals and guidelines create an obligation on the part of the VA to "help veterans retain their homes during temporary financial difficulties." VA Loan Guaranty Bulletin No. 566 at p. 3 (1980). Plaintiff argues that these manuals and guidelines give rise to an implied cause of action against VA and private lenders whenever VA fails properly to help a veteran avoid foreclosure. Both the Ninth Circuit, in Rank v. Nimmo, 677 F.2d 692 (9th Cir.), cert. denied, 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982), and the D.C. Circuit, in Simpson v. Cleland, 640 F.2d 1354 (D.C.Cir.1981), have squarely rejected claims identical to plaintiff's. The D.C. Circuit explained:
 
 
 16
 In the view compelled upon us by Cort v. Ash [422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) ] and its progeny, we must conclude ... that appellant lacks any express or implied right of action in federal court to enforce duties V.A. and lenders may have pursuant to V.A. publications.... The now familiar Cort v. Ash factors relevant to implying a private cause of action are: whether appellant belongs to "the class for whose especial benefit the statute was enacted;" whether there is any "indication of legislative intent ... to create such a remedy;" whether implying a remedy is "consistent with the underlying purpose of the legislative scheme;" and whether the cause of action is "one traditionally relegated to state law." Cort v. Ash, supra, 422 U.S. at 78, 95 S.Ct. at 2087. Appellant in this case cannot demonstrate that any specific statute creates a federal right in his favor. He lacks a statutory basis for his action. The V.A. publications on which he relies are not sufficient as the basis for his suit. Nor has appellant cited any statutory language or legislative history which even arguably indicates a "legislative intent" to establish a private right of action in a case such as this. Finally, and most importantly, appellant, represented by able counsel, had, and may possibly still have, "access to state remedies" to set aside the foreclosure which he suffered, remedies which are "traditionally relegated to state law." Id.
 
 
 17
 Simpson v. Cleland, 640 F.2d at 1359-60 (citations and footnotes omitted). The Ninth Circuit agreed, holding that "neither the statutory language nor the legislative history of the VA Act provides any 'indication of legislative intent ... to create such a remedy' against the private lender." Rank v. Nimmo, 677 F.2d at 697 (quoting Cort v. Ash, 422 U.S. at 78, 95 S.Ct. at 2087).
 
 
 18
 We find the reasoning of Simpson and Rank persuasive on this issue, particularly in view of the fact that no federal appellate court to date has reached a contrary conclusion.[1] Furthermore, although this circuit has not previously addressed the particular issue raised in this case, the former Fifth Circuit, in United States v. Harvey, 659 F.2d 62 (5th Cir. Unit B 1981),[2] rejected the same theoretical foundation on which plaintiff's claim is based. The facts in Harvey were similar to those in the instant case, except that the loan had been provided directly by VA rather than by a private lender. When VA foreclosed on the loan, the veteran sued VA, arguing that a VA manual created a duty on the part of VA to help veterans avoid foreclosure. On appeal, the former Fifth Circuit held:
 
 
 19
 In sum, although the VA manual clearly authorizes, and may encourage, the employees to cooperate with defaulting mortgagors toward the end that such mortgagors might retain their homes, the manual does not create substantive rights in the mortgagor enforceable in federal court.
 
 
 20
 Id. at 65-66. Although the Harvey court did not specifically address whether the manual created an implied private right of action in the mortgagor, see id. at 66 n. 7, the court's conclusion, that the manual did not create "substantive rights" enforceable by the mortgagor, is irreconcilable with the existence of such a cause of action. We therefore hold that plaintiff has no cause of action against VA and GC, and we affirm the district court's grant of summary judgment in favor of both defendants.[3]
 
 III. CONCLUSION
 
 21
 On the basis of the foregoing discussion, the judgment of the district court is hereby AFFIRMED.
 
 APPENDIX A
 In the Supreme Court of Georgia
 Decided: 9/26/84
 
 22
 41092. BRIGHT v. NIMMO et al.
 
 
 23
 HILL, Chief Justice.
 
 
 24
 This case is here on a certified question from the United States Court of Appeals for the Eleventh Circuit. The statement of facts as recited by that court follows:
 
 
 25
 "The plaintiff, Rufus Bright, Jr., suffered an employment-related injury on July 3, 1981, and filed for Workers Compensation benefits. His employer, American Cyanamid Company (ACC), and the employer's insurer, Insurance Company of North America (ICNA), contested the claim to the Workers Compensation Board and refused to make payments to the plaintiff. The defendants' controversion of the claim was untimely filed in violation of OCGA Sec. 34-9-221(d).
 
 
 26
 "The Board found that the defendants had notice of the compensable injury on July 3rd, and had 'without reasonable grounds' failed to comply with the Act's requirements for controverting the plaintiff's claim for benefits. Pursuant to OCGA Sec. 34-9-221(e), the Board awarded the plaintiff a fifteen per cent statutory penalty and attorney fees, in addition to his income benefits, for failing to comply with the Act's provisions.
 
 
 27
 "The plaintiff subsequently brought suit alleging, inter alia, that the defendants had 'willfully and intentionally' delayed these payments to the plaintiff, resulting in adverse financial consequences and foreclosure upon his home. The defendants moved for summary judgment on the ground that OCGA Sec. 34-9-221(e) was the plaintiff's sole remedy for delayed payment of benefits and, therefore, plaintiff had no independent cause of action outside the Act. The district court granted summary judgment finding it unnecessary to decide if the defendants had intentionally delayed payments, because it determined that the Georgia courts, unlike other jurisdictions, have not decided such a cause of action exists independent of the Act's penalty provisions. The plaintiff has appealed from the summary judgment order."
 
 
 28
 The Eleventh Circuit then certified the following question to this court:
 
 
 29
 "Does Georgia law recognize an independent cause of action apart from the remedies available under OCGA Sec. 34-9-221(e) where the employer and/or insurer have allegedly intentionally delayed Workers Compensation payments that the employee is entitled to under the Act and where they have not properly complied with the Act's requirements?"The record shows that the plaintiff was injured on July 3, 1981, and the Board found that the employer had notice of the injury on that date. The defendants' untimely notice to controvert was filed on October 7, 1981. A hearing scheduled for October 14 was continued by the administrative law judge at defendants' request to November 9. Following that hearing, the award was rendered in plaintiff's favor on December 16, and was paid to date by ICNA on December 27, 1981, including the attorney fees and 15% penalty.
 
 
 30
 In general, our workers' compensation law provides benefits to an employee injured "by accident arising out of and in the course of the employment." OCGA Sec. 34-9-1(4).[1] The law provides that "The rights and the remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee ... at common law or otherwise, on account of such injury...." OCGA Sec. 34-9-11. The limitations of liability afforded by the law to an employer extend to the employer's workers' compensation insurer. OCGA Secs. 34-9-1(3), 34-9-11; Sims v. American Cas. Co., 131 Ga.App. 461, 474, 206 S.E.2d 121 (1974).
 
 
 31
 OCGA Sec. 34-9-11, supra, has been interpreted consistently to mean that, "where the workers' compensation law is applicable, it provides the employee's exclusive remedy against his employer." Freeman v. Ryder Truck Lines, Inc., 244 Ga. 80, 82, 259 S.E.2d 36 (1979) (citing cases). Conversely, although "the remedy provided by this statute is exclusive within the field of its operation ... it does not exclude redress in cases to which it is not applicable." Covington v. Berkeley Granite Corp., 182 Ga. 235, 237, 184 S.E. 871 (1936). In Covington, the court went on to say, "the right 'to bring an ordinary action for damages' is not excluded by the statute as to injuries which do not fall within its terms" (182 Ga. at 238, 184 S.E. 871). Compare Nowell v. Stone Mt. Scenic RR., 150 Ga.App. 325, 257 S.E.2d 344 (1979).
 
 
 32
 Intentional injuries warrant special consideration. In Smith v. Rich's, Inc., 104 Ga.App. 883, 123 S.E.2d 316 (1961), the plaintiff alleged that her employer falsely arrested and imprisoned her for 5 hours while investigating an alleged shortage of money, and that during this period she was denied medicine and milk to relieve the pain of stomach ulcers and was denied food, water and the use of the rest room. The court held that intentional torts committed by the employer upon an employee are not "accidents" and hence are not covered by the workers' compensation act, and thus a common law tort action could be maintained. In Cline v. Aetna Cas. etc. Co., 137 Ga.App. 76(1), 223 S.E.2d 14 (1975), the court held that an employer and its insurer could be sued in tort for defrauding the employee by withholding medical evidence of the employee's condition from the Board at the time of approval of a lump sum settlement.
 
 
 33
 In Helton v. Interstate Brands Corp., 155 Ga.App. 607, 271 S.E.2d 739 (1980), plaintiff sued her employer in tort for failing to maintain a well-lighted and secure parking lot where plaintiff was assaulted and kidnapped (and later raped) when she arrived for work at 4:40 a.m. After finding that plaintiff was injured by accident arising out of and in the course of the employment for reasons not personal to the employee, the court held that plaintiff's exclusive remedy was under the Workers' Compensation Act, notwithstanding plaintiff's allegations that the defendant's acts were intentional and wilful. On the other hand, in Cox v. Brazo, 165 Ga.App. 888, 303 S.E.2d 71 (1983), aff'd 251 Ga. 491, 307 S.E.2d 474 (1983), plaintiff was allowed to maintain an action in tort against her employer for sexual assault and harassment by her supervisor where the employer had notice of the supervisor's proclivity to engage in sexually offensive conduct toward female employees. This result was reached because OCGA Sec. 34-9-1(4), supra, excludes from the definition of injury, "injury caused by the willful act of a third person directed against an employee for reasons personal to such employee." See Murphy v. ARA Services, Inc., 164 Ga.App. 859, 861, 863, 298 S.E.2d 528 (1982).[2]
 
 
 34
 In the question certified to us, it is stated that plaintiff alleges that the defendants wilfully and intentionally delayed paying workers' compensation benefits to him (until the Board entered its award), that the Board awarded 15% statutory penalty plus attorney fees, and that the defendants' delay caused plaintiff adverse financial consequences and foreclosure upon his home. (We note that almost every delay in payment by a solvent payor will be wilful and intentional with the consequences upon the payee being dependent upon the payee's financial circumstances.)
 
 
 35
 Thus, we are faced not with an alleged intentional physical injury by the employer but with an alleged intentional financial injury. The defendants argue that OCGA Sec. 34-9-221(e) provides the exclusive remedy available to plaintiff. That sub-section, which deals solely with income benefits (as opposed to benefits for medical, surgical, hospital, etc., care), provides: "If any income benefits payable without an award are not paid within 14 days after becoming due, there shall be added to the accrued income benefits an amount equal to 15 percent thereof, which shall be paid at the same time as, but in addition to, the accrued income benefits unless notice is filed under subsection (d) of this Code section or unless this nonpayment is excused by the board after a showing by the employer that owing to conditions beyond control of the employer the income benefits could not be paid within the period prescribed." OCGA Sec. 34-9-108(b) makes provision for attorney fees.
 
 
 36
 In Raines & Milam v. Milam, 161 Ga.App. 860, 289 S.E.2d 785 (1982), the employer failed to file a timely notice to controvert as is the situation in the case before us. The employee urged that the employer should be estopped from controverting the claim. The court pointed out that the law authorized the Board to impose attorney fees if the employer, without reasonable grounds, fails to timely controvert the claim, saying: "It is not our function to enlarge these statutory sanctions; rather, any enlargement of sanctions already available is for the General Assembly." 161 Ga.App. at 862, 289 S.E.2d 785.
 
 
 37
 As pointed out by the Eleventh Circuit, some other jurisdictions have held that intentional delay of compensation payments gives rise to an independent cause of action. The grandfather case so holding was Stafford v. Westchester Fire Insurance Co., 526 P.2d 37 (Alaska 1974). See 2A Larson, Workmens' Compensation Law Sec. 68.34(c). See also "Tort Liability of Worker's Compensation Insurer for Wrongful Delay or Refusal to Make Payments Due," 8 A.L.R. 4th 902 (1981). We hold, however, that the intentional delay of workers' compensation payments does not give rise to an independent cause of action against the employer or its insurer where penalties for such delay are provided by the act. That is to say, where the Workers' Compensation Act provides penalties for delay, such penalties exclude the employee's use of common law remedies. See Aetna Cas. etc. Co. v. Davis, 253 Ga. 376, 320 S.E.2d 368 (1984), decided this day.
 
 
 38
 CERTIFIED QUESTION ANSWERED IN THE NEGATIVE. ALL THE JUSTICES CONCUR.
 
 
 
 [1]
 Plaintiff cites only one case in which a court has recognized a private right of action on behalf of veterans and against VA and private lenders. See Rank v. Cleland, 460 F.Supp. 920 (C.D.Cal.1978). The Ninth Circuit, however, subsequently reversed Rank v. Cleland. See Rank v. Nimmo, 677 F.2d at 702
 
 
 [2]
 Decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981, are binding precedent in this circuit. Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir.1982)
 
 
 [3]
 We also agree with the district court that, because plaintiff failed to pay or tender the accelerated balance due on the mortgage, plaintiff is not entitled to equitable relief from the foreclosure under Georgia law. See Coile v. Finance Co. of America, 221 Ga. 584, 146 S.E.2d 304, 305 (1965) ("The failure of appellant to allege either payment or a tender of the balance due on the debt secured by the deed was fatal to his equitable petition to enjoin the sale of the property...."); cf. Philyaw v. Fulton National Bank, 139 Ga.App. 28, 227 S.E.2d 811, 813 (1976) ("Acceleration clauses in promissory notes are valid and enforceable.... Where the election to accelerate is declared prior to the tender of arrearage, the rights of the parties are the same as if the entire note had by its terms become due immediately upon default. The entire debt being due, the mere acceptance of part-payment thereon does not amount to a waiver of the prior default....")
 
 
 [1]
 OCGA Sec. 34-9-1(4), supra, excludes from the definition of injury, "injury caused by the willful act of a third person directed against an employee for reasons personal to such employee...."
 
 
 [2]
 For other cases involving intentional acts of officers and employees of the employer, see Samuel v. Baitcher, 247 Ga. 71, 274 S.E.2d 327 (1981); Downey v. Bexley, 253 Ga. 125, 317 S.E.2d 523 (1984)