Petrit N. BULETINI, Plaintiff,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Defendant.

Civ. A. No. 93–73967.

United States District Court, E.D. Michigan, Southern Division.

Aug. 19, 1994.

---

Michael L. Wicks, U.S. Atty., Detroit, MI, for defendant.

McGill, Kelly, Birmingham, MI, for plaintiff.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Defendant filed a motion for summary judgment March 10, 1994. Plaintiff filed a motion for summary judgment April 11, 1994.

No responsive pleadings were filed. Oral argument was heard August 10, 1994.

### I. Procedural Background

On October 18, 1992, plaintiff submitted a visa petition seeking first priority classification as an alien of extraordinary ability under 8 U.S.C. § 1153(b)(1)(A). On January 14, 1993, the Director of the Northern Service Center ("NSC") for the Immigration and Naturalization Service ("INS") issued a decision denying plaintiff's petition. Plaintiff appealed that decision to the Administrative Appeals Unit ("AAU") on February 11, 1993. On August 12, 1993, the AAU issued an opinion dismissing plaintiff's appeal. On September 22, 1993, plaintiff filed a complaint with this court seeking a declaration that he is entitled to first preference status under 8 U.S.C. § 1153(b)(1)(A) as an alien of extraordinary ability. On November 19, 1993, defendant answered the complaint.

### II. Factual Background

Plaintiff was born June 7, 1954 in the city of Korce, in the southeast section of the nation of Albania. Plaintiff graduated in 1979 from the University of Tirana in Albania with a degree in medicine. His grade point average was 9.4 out of a possible score of 10.

In 1979, plaintiff began practicing medicine at the Hospital and Polyclinic of the City of Korce. From March 1981 to March 1984, plaintiff pursued and completed a specialization in pathology with a concentration in hyperextensive nephrology [1]; on his final examinations for his specialty, taken at the University of Tirana, plaintiff received a score of 10.0 out of 10.0. During his work of specialization, plaintiff also directed the nephrology department for the administrative district of Korce.

From 1986 to 1989, plaintiff served as Deputy Technical–Scientific Director of the Korce Hospital and Polyclinic. He also served as head of technical-scientific work in the hospital and polyclinics, as Chairman of the Certification Commission for physicians and other hospital workers, as Chairman of the Scientific Council, Chief of the Division of Internal Medicine of the Female Department (aka, Gynecological Pathology), a member of

---

1. Nephrology is the branch of medicine dealing with the kidney.

the Forensic Medicine Commission,[2] a member of the Chairmanship of the Association of Physicians of the Administrative District of Korce, and a participant in all scientific sessions that were held between 1985 and 1991 at which plaintiff delivered papers of "a superior level" (Tr. at 87) and of "extensive value." (Tr. at 91). Those papers included the following: "Anemia and H.T.A. in I.R.CH.: Possibilities of Early Diagnosis," (1985), "Urinary Infections in I.R.CH" (1986), "Cardiovascular Changes in I.R.CH" (1987), "The Interrelationship of Gastroduodenal Meclizine Illnesses and Hepatic Cirrhosis" (1988), "Urinary Infections During Pregnancy" (1989), "The Treatment of Urinary Infections with Propolis" (1990). (Tr. at 91).

Plaintiff introduced the idea of, and directed the work for dispensary facilities in villages of the administrative district of Korce, which was the first program of its kind and was of "national importance." (Tr. at 91). On January 4, 1989, plaintiff published a study regarding dispensary facilities in "Zeri i Popullit," the largest circulation newspaper in the nation of Albania. (Tr. at 67). According to the editor of the Korce newspaper "Time," newspaper articles regarding the extraordinary ability of plaintiff in the medical field appear "continually" in that publication. (Tr. at 60). The Head of the Division of Public Health, Dr. Gaqo Mano, Office of the Mayor of the District of Korce, attests that plaintiff

> is a doctor of extraordinary ability in technical and scientific research. He is one of the few who has contributed to the growth and development of the Public Health Medical Field in the District of Korce, has reached the top in his specialty and has the ability to go even further. His accomplishments in research are extraordinary and have been presented at the highest scientific level at organized symposiums becoming a great example and inspiration for all doctors.

(Tr. at 64).

In 1988, a book entitled the "History of Public Health in the District of Korce," writ-

ten by plaintiff and covering a period of three-hundred years, was published in Albania. (Tr. at 58). Authorship of this book "earned [plaintiff] high acclaim and distinction by his colleagues and his country." (Tr. at 58). On June 12, 1990, plaintiff was awarded "The Medal for Good Service to the People" by the Presidium of the People's Assembly of the People's Socialist Republic of Albania. (Tr. at 83). The Presidium is the equivalent of the United States Congress, as it is the highest governing body in the nation of Albania.[3] (Tr. at 58). The medal is signed by the Secretary and Chairman of the Presidium, who is also President of the Republic of Albania. (Tr. at 58). The award was given "for continual service to the people and for help in the compilation of the history of public health in the district of Korce." (Tr. at 84).

Plaintiff was remunerated by the Korce Hospital and Polyclinics at the highest salary possible, that is, twice the salary paid to the average doctor in Albania. Article I of Albanian law # 5839, dated February 20, 1979, provides that the "ratio between the average salary and the maximum salary [is] not to exceed ratio 1 to 2 in all fields and branches of the economy in this country." (Tr. at 8). Determination of plaintiff's salary was based upon "the importance of his special work accomplished in the position he held" at the hospital. (Tr. at 14).

In April 1991, plaintiff submitted for publication a German–Albanian Medical Dictionary composed of 25,000 words. (Tr. at 16). Plaintiff spent ten years compiling the dictionary. The dictionary was accepted for publication by the Cultural Ministry Encylopedic Publishing House. Printing of the dictionary, however, has been postponed "because of economic difficulties such as a lack of materials like paper etc." (Tr. at 16).

In October 1991, plaintiff entered this country for pleasure. In October 1992, plain-

---

2. The Forensic Medicine Commission judges three times a week, the professional abilities of physicians in the diagnosis and therapy of ambulatory patients. The commission also decides whether patients should be given disability pay.

3. Plaintiff was not a member of any political party in Albania and the award of this medal had no relation to any political affiliation of plaintiff.

tiff filed this petition seeking a priority status visa. Plaintiff submits the letter of A. Hynsi, M.D., of Detroit, Michigan, indicating that Dr. Hynsi would like to hire plaintiff to work as a doctor in the field of Internal Medicine, Cardiology and Nephrology, in Hynsi's medical clinic on a full-time basis. (Tr. at 18). Dr. Hynsi writes that plaintiff has "expertise in all of [those] areas [that] is rarely found in one individual. He is quite an extraordinary doctor and has accomplished so much." (Tr. at 18).

Plaintiff also submits a letter from William W. O'Neill, M.D., Director of the Division of Cardiology at William Beaumont Hospital, Royal Oak, Michigan, addressed to the Chairman of that hospital. (Tr. at 66). Dr. O'Neill requests that plaintiff be given a volunteer[4] position in the hospital in the cardiology research division. Dr. O'Neill relates to the chairman of the hospital that plaintiff

> is very well qualified for this work, and I feel he will be an excellent assistant to our overworked research team. He has impressed my partner, Dr. Cindy Grines, with his fluent English and medical knowledge. I feel that his European, sophisticated expertise in Cardiology, Nephrology and the treatment of hyperextensive disease will compliment our own experience in these areas.

(Tr. at 66).

## III. Standard of Review

■ Plaintiff has exhausted his administrative remedies. Pursuant to 8 U.S.C. § 1329, this court has jurisdiction to review the INS's denial of plaintiff's petition for first preference status. *Hom Sin v. Esperdy,* 239 F.Supp. 903, 905 (S.D.N.Y.1965).

■ In reviewing an administrative decision of the INS, the court is to apply the abuse of discretion standard of review. *Gonzales v. Immigration & Naturalization Serv.,* 996 F.2d 804, 808 (6th Cir.1993); *Occidental Eng'g Co. v. Immigration & Naturalization Serv.,* 753 F.2d 766, 767 (9th Cir. 1985).

> There is no exact measure of what constitutes abuse of discretion. It is more than the substitution of the judgment of one tribunal for that of another. Judicial discretion is governed by the situation and circumstances affecting each individual case. Even where an appellate court has power to review the exercise of such discretion, the inquiry is confined to whether such situation and circumstances clearly show an abuse of discretion, that is, arbitrary action not justifiable in view of such situation and circumstances.

*Gonzales, supra,* (quoting *Balani v. Immigration & Naturalization Serv.,* 669 F.2d 1157, 1161 (6th Cir.1982). A court may find that the agency abused its discretion where the agency's decision was based on an improper understanding of the law. *Occidental Eng'g, supra.* The law that must be followed by an agency includes the regulations that are issued by that agency. *Confederated Tribes & Bands v. Federal Energy Regulatory Comm'n,* 746 F.2d 466, 474 (9th Cir.1984). An abuse of discretion may also be found where the agency fails to consider all of the relevant evidence submitted. *Dragon v. Immigration & Naturalization Serv.,* 748 F.2d 1304, 1306 (9th Cir.1984).

## IV. Applicable Law and Regulations

Plaintiff has applied for an immigrant visa as a person of "extraordinary ability" pursuant to 8 U.S.C. § 1153(b)(1)(A). That subsection provides that aliens with extraordinary ability shall be considered "priority workers" and given first preference with respect to visas. Under subsection (b)(1)(A), an alien shall be given first preference for a visa if:

> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,
>
> (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, *and*

---

4. Dr. O'Neill explains that plaintiff does not yet have the permission of immigration officials to obtain permanent employment but in the meantime would like to work as a volunteer.

(iii) the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A). This subsection was added by act of Congress November 29, 1990 ("the 1990 Amendment") and is applicable to individuals entering the United States on or after June 1, 1991. Plaintiff entered this country as a visitor for pleasure on October 31, 1991.

█ The legislative history indicates that the phrase "extraordinary ability" was intended by Congress to be comparable to the Department of Labor's "exceptional ability" standard set out in 20 C.F.R. § 656.10, Schedule A/Group II. 56 Fed.Reg. 60,898 (1991) (codified at 8 C.F.R. § 103 and 204), *citing* H.R.Rep. No. 101–723, part 1, 101st Cong., 2d Sess. 59 (1990), U.S.Code Cong. & Admin.News 1990, p. 6710. That regulation was developed and employed by the Department of Labor ("DOL") for use in implementing the 1976 Immigration and Nationality Act.

The DOL is involved in immigration cases because the INS requests that certain aliens seeking a visa obtain a labor certification from the DOL. The labor certification verifies that there are not sufficient American workers able, willing, qualified, and available in the alien's field of endeavor, and that employment of the alien will not adversely affect American labor. *Kooritzky v. Reich,* 17 F.3d 1509, 1511 (D.C.Cir.1994); *Hassanali v. Attorney General,* 599 F.Supp. 189, 193 (D.D.C.1984).

Prior to the 1990 Amendment, the 1976 Immigration and Nationality Act provided that third preference [5] would be given to

qualified immigrants who are members of the professions or who because of their exceptional ability in the sciences or the arts will substantially benefit prospectively the national economy, cultural interests, or welfare of the United States and whose services in the professions, sciences, or arts are sought by an employer in the United States.

8 U.S.C. § 1153(a)(3) (1976). Because the third preference required that the services of the alien of exceptional ability be sought by an employer, the alien seeking status under this preference was required to obtain from the DOL a labor certificate.

As an aid in determining which aliens should receive the labor certificate, the DOL adopted, *inter alia,* regulation 20 C.F.R. § 656.10. That regulation set forth fields of occupation for which aliens may receive a blanket (i.e. automatic) labor certification due to the shortage of American workers in those fields. The regulation reads as follows:

§ 656.10 Schedule A.

The Director, United States Employment Service (Director), has determined that there are not sufficient workers who are able, willing, qualified, and available for the occupations listed below on Schedule A and that wages and working conditions of United States workers will not be adversely affected by the employment of aliens in Schedule A occupations....

Schedule A

\*　　\*　　\*　　\*　　\*　　\*

(b) Group II:

Aliens (except for aliens in the performing arts) of *exceptional ability* in the sciences or arts including college and university teachers of exceptional ability who have been practicing their science or art during the year prior to application and who intend to practice the same science or art in the United States. For purposes of this group, the term "science or art" means any field of knowledge and/or skill with respect to which colleges and universities commonly offer specialized courses leading to a degree in the knowledge and/or skill. An alien, however, need not have studied at a college or university in order to qualify for the Group II occupation.

20 C.F.R. § 656.10, Schedule A/Group II (emphasis added). This "exceptional ability" standard of the DOL was intended by Con-

---

**5.** First and second preferences were given under this statute to the unmarried sons or daughters of citizens of the United States, and to the spouses and unmarried sons or daughters of resident aliens, respectively.

gress to be extended to and comparable with the "extraordinary ability" standard found in subsection (b)(1)(A) of the 1990 Amendment to 8 U.S.C. § 1153. *See* 56 Fed.Reg. 60,898 (1991), *supra.*

Like the DOL's regulation waiving the labor certificate for certain categories of employees, the 1990 Amendment was intended by Congress to increase the influx into the United States of highly skilled professionals to fill jobs for which American personnel are scarce. The 1990 Amendment provides for a "substantial increase ... in the number of visas for permanent employment [which] will help meet current demands and reduce backlogs which have hampered employers' ability to conduct business." H.R.Rep. No. 101–723, part 1, 101st Cong., 2d Sess. 58 (1990), U.S.Code Cong. & Admin.News 1990, p. 6738. The INS, in developing its regulations for the implementation of the 1990 Amendment, emphasized that the purpose of the rule was to ease entry of highly trained workers:

> This rule is necessary to help American businesses hire highly skilled, specially trained personnel to fill increasingly sophisticated jobs for which domestic personnel cannot be found.

56 Fed.Reg. 60,897 (1991) (codified at 8 C.F.R. § 103 and 204).

In 1993, the INS issued its regulations implementing, *inter alia,* the extraordinary ability provision of the 1990 Amendment.

These regulations, found at 8 C.F.R. § 204.-5(h), provide as follows:

> Extraordinary ability means a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor.
>
> (2) Initial evidence. A petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise. Such evidence shall include evidence of a one-time achievement (that is, a major, international recognized award), or at least three of the following:

The regulation then lists ten factual standards. 8 C.F.R. § 204.5(h)(3)(i)–(x).[6] Plaintiff claims that he has demonstrated that he is an alien of extraordinary ability by his having met four of the factual standards; those standards are (i), (iv), (v), and (ix). Plaintiff's eligibility under these four standards, and the agency's ruling on same, are discussed *infra.*

The agency regulations then provide that if the ten enumerated standards do not readily apply to the alien's "occupation," the alien may submit "comparable evidence" to establish the alien's eligibility. 8 C.F.R. § 204.-5(h)(4). The legislative history indicates that the "INS must consult with peer groups in the alien's field prior to determining eligibility." 1990 U.S.C.C.A.N., Vol. 8 at 6739 (Analysis of Specific Provisions of Act of Nov. 29,

---

**6.** The ten factual standards are as follows:

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

1990, Pub.L. No. 101–649), *citing* H.R.Rep. No. 101–723, part 1, 101st Cong., 2d Sess. 58 (1990).

Finally, the regulations provide that an alien of extraordinary ability need not have an offer of employment or a labor certificate to be eligible for a first priority visa under this subsection. 8 C.F.R. § 204.5(h)(5). However, the regulations do require the alien to demonstrate by "clear evidence" that he or she is coming to the United States to continue work "in the area of expertise." *Id.*[7]

The INS regulation does not discuss the statute's requirement that the alien's entry into the United States "substantially benefit prospectively the United States." 8 U.S.C. § 1153(b)(1)(A)(iii). In the treatise "Immigration Law and Procedure," this omission is explained as follows:

> [e]—Substantial Benefit Prospectively to the U.S.
>
> That the alien's entry "substantially benefit prospectively the United States" is the most liberal of [the statute's] demands: apparently, a substantial benefit to the United States in any of its aspects, interests or needs will do.... it is fair to assume that aliens who work in the area of their extraordinary (or exceptional) ability will substantially benefit the interests of the United States in some fashion and pass this test. Apparently the Service agrees: its regulations exact no documentation on this question.

2 Matthew Bender, Immigration Law & Procedure § 39.03[e] at 39–24, 39–25 (Rev'd ed. 1993). Thus, the third requirement of the statute, 8 U.S.C. § 1153(b)(1)(A)(iii), is disregarded, the assumption being that persons of extraordinary ability working in their field of expertise will benefit the United States.

**7.** The 1990 Amendment states, by contrast, that the alien must be seeking "to enter into the United States to continue work in the area of *extraordinary ability.*" 8 U.S.C. § 1153(b)(1)(A)(ii). This distinction is noteworthy because, as discussed *infra*, this case raises the question of whether a doctor must demonstrate that he will work in a particular field of expertise for which he has gained notoriety for research, such as cardiology, or whether it is sufficient for the doctor to demonstrate that he will continue work as a doctor and researcher of medicine, and that he will not work in the United States, for example, as a taxi cab driver.

**8.** Placing plaintiff in the field of medical science already narrows his field down from the more general field of "science."

## V. Analysis

In response to plaintiff's appeal, the AAU issued a brief opinion which essentially decided that "the decision of the director [of the NSC] will not be disturbed." This court therefore shall review for abuse of discretion both the January 14, 1993 decision of the NSC Director (the "Director") as well as the AAU's August 12, 1993 decision.

### A. The NSC Director's January 14, 1993 Decision and the AAU's August 12, 1993 Decision

The Director's decision indicates that the INS is applying in plaintiff's case a much higher standard of eligibility than is called for by the 1990 Amendment or the federal regulations. First, the Director inaccurately characterizes plaintiff narrowly as a scientific researcher in the field of nephrology, rather than as a doctor of medicine.

The 1990 Amendment requires that the alien demonstrate "extraordinary ability *in the sciences* ... by sustained national acclaim" and seek to enter "the United States to continue work *in the area* of extraordinary ability." 8 U.S.C. § 1153(b)(1)(A)(i)–(ii). The statute speaks in general terms. It does not demand that the alien's extraordinary ability be narrowed to a specific topic of scientific study or that plaintiff show that he is seeking to enter the United States to continue work in the specific areas for which he has he has gained acclaim in the past. Plaintiff's area of extraordinary ability is not limited to the specific study of nephrology but rather is within the general field of medical science.[8]

Because the legislative history of the 1990 Amendment cross-references the DOL's regulation on exceptional ability, the DOL's regulation addressing "aliens ... of *exceptional ability* in the sciences or arts" provides some guidance as to what Congress intended by

the term "science." That regulation states that the field of "science" means "any field of knowledge and/or skill with respect to which colleges and universities *commonly* offer specialized courses leading to a degree in the knowledge and/or skill." 20 C.F.R. § 656.10. This language indicates that the alien's field of endeavor was intended by Congress to be characterized by the commonly offered degree; in this case, that is the medical degree.

Furthermore, the evidence itself undermines the Director's characterization of plaintiff as a scientific researcher in the narrow field of nephrology. The evidence establishes that plaintiff, in fact, is more accurately described as a physician who practices (that is, attends to patients) in the field of internal medicine, including gynecology, and who holds a specialized degree in general pathology with a concentration in nephrology.[9] Plaintiff's research has covered a broad range of topics, including a history of public health for which he won a national award, a medical dictionary that has been accepted for publication, and numerous articles on a variety of topics (though primarily on nephrology) presented to the Korce medical community.[10]

Plaintiff was also responsible for such general health projects as the creation of dispensary facilities in the villages within the district of Korce. (Tr. at 91) He was an adjunct professor at the Tirana medical school. And he was actively engaged in consultations and the making of service visits to the hospital. In short, he is a medical doctor who generally carries out the traditional functions of that profession, while also engaging in various research projects.

### (i) Whether Plaintiff Meets the Requirement of Having Received a Lesser Nationally Recognized Award, Criterion 8 C.F.R. § 204.5(h)(3)(i)

■ The INS regulation requires the alien to submit evidence that the alien has sus-

tained national or international acclaim and that his or her achievements have been recognized in their field. The evidence must include either evidence of a one-time achievement (that is, a major internationally recognized award), or at least three of the eleven listed criteria.

The first criterion of the INS regulation reads as follows:

> (i) Documentation of the alien's receipt of lesser nationally *or* internationally recognized prizes or awards for excellence in the field of endeavor;

8 C.F.R. § 204.5(h)(3)(i) (emphasis added). The Director recognizes that plaintiff was awarded the Medal for Good Service to the People from the Presidium of the People's Assembly of the People's Socialist Republic of Albania "for continual service to the people and for help in the compilation of the history of public health in the District of Korce." The Director, however, discounts the importance of this award because "the criteria for this awarded [sic] has not been submitted as well as the significance of this award *outside of Albania.*" (Tr. at 44) (emphasis added). It is clear from the language of the award itself, however, that the award was given in recognition of plaintiff's work in compiling the history of public health. It also appears to be a medal honoring plaintiff for his continual service as a doctor.[11]

The Director's requirement that the award be of significance outside of Albania adds to the 1990 Amendment a requirement of international recognition that Congress did not demand. The 1990 Amendment states, in the disjunctive, that an alien may demonstrate extraordinary ability through "national *or* international acclaim." 8 U.S.C. § 1153(b)(1)(A)(i). Moreover, the INS's own regulation states that an alien may present evidence of "the alien's receipt of lesser nationally *or* internationally recognized prizes or awards." 8 C.F.R. § 204.5(h)(3)(i). Thus,

---

9. Plaintiff also appears to have expertise in cardiology. *See* Tr. at 66 (Letter from Director of Cardiology at William Beaumont Hospital, Royal Oak, Michigan).

10. See list of article titles, *supra,* at page 7.

11. On appeal to the AAU, plaintiff submitted the affidavit of the Director of the Korce Hospital attesting that the criteria for the Medal for Good Service to the People are the special work, extraordinary ability and excellent medical activity that a doctor has performed on a continual basis. (Tr. at 10).

the award need not have significance outside of one country. National recognition of the award is sufficient. The court therefore finds that the Director's refusal to recognize plaintiff's award as meeting the criterion set forth in 8 C.F.R. § 204.5(h)(3)(i) results from a misunderstanding of the law and constitutes an abuse of discretion.

**(ii) Whether Plaintiff Meets the Requirement of Having Participated, Either Individually or on a Panel, as a Judge of the Work of Others in the Same Field, Criterion 8 C.F.R. § 204.5(h)(3)(iv)**

██ The fourth criterion listed in the INS regulation reads as follows:

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

8 C.F.R. § 204.5(h)(3)(iv).

In rejecting plaintiff's claim of having met this fourth criterion, the Director considers only plaintiff's participation as Chief of the Certification Commission at the Korce City Hospital. The Certification Commission is a body which judges the scientific work of other doctors for purposes of determining what salary they would be paid. For unexplained reasons, the Director does not consider plaintiff's participation on other committees, such as plaintiff's chairmanship of the Scientific Council. The Scientific Council is responsible for directing the research and scientific work that is done at the Korce Hospital and for judging the work of all doctors engaged in such work.

The Director also augments the fourth criterion of the regulation by requiring plaintiff to demonstrate not only that he participated as a judge of the work of other doctors but also that his participation on the .commission "required or involved extraordinary ability." (Tr. at 45) The fourth criterion, however, only requires evidence that the alien participated as a judge of others in his field; it does not include a requirement that an alien also demonstrate that such participation was the result of his having extraordinary ability. Such a requirement would be a circular exercise: the criterion is designed to serve as proof that plaintiff is a doctor of extraordi-

nary ability; the Director's requirement would mean that plaintiff must prove he is a doctor of extraordinary ability in order to prove that he is a doctor of extraordinary ability. Thus, the court finds that the Director's refusal to find that plaintiff meets the fourth criterion of the INS regulation results from a misunderstanding of the law and constitutes an abuse of discretion. The evidence clearly demonstrates that plaintiff has served on more than one panel as a judge of the work of others in the medical field.

**(iii) Whether Plaintiff Meets the Requirement of Having Received Significantly High Remuneration for Services, Criterion 8 C.F.R. § 204.5(h)(3)(ix)**

██ The ninth criterion set forth in the INS regulation reads as follows:

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field;

8 C.F.R. § 204.5(h)(3)(ix). Plaintiff submitted to the Director evidence that he received the maximum salary of the Korce Hospital. The Director rejected this evidence as insufficient to meet the ninth criterion because the Director had no means of determining the amount of the salary paid or the qualifications necessary to achieve that salary. The regulation makes no requirement that an alien detail the qualifications necessary to achieve the alien's salary. By adding this requirement, the Director again is asking plaintiff to demonstrate not only that he meets the regulation's criteria but also that he was able to achieve the criteria because he is a doctor of extraordinary ability. The Director again is asking plaintiff to engage in a circular exercise. Proof that an alien meets three of the criteria of the regulation is intended to constitute evidence that the alien has extraordinary ability. If plaintiff is paid significantly more than others in his field, the general deduction to be made is that plaintiff must be a better doctor than those others, and perhaps a doctor of extraordinary ability.

On appeal to the AAU, plaintiff submitted further evidence with respect to his remuner-

ation. That evidence indicates that plaintiff received from the Korce Hospital the highest salary (Tr. at 14) permitted under the law of Albania (Tr. at 8), that the salary was twice the average salary of other Albanian doctors (Tr. at 8), and that he received the maximum salary because of the importance of the special work he accomplished at the Korce Hospital (Tr. at 14). The AAU entirely ignores this additional evidence in its August 12, 1993 decision upholding the Director's decision. In fact, the AAU makes no mention whatsoever of plaintiff's claim that he meets the ninth criterion.[12]

The court finds that plaintiff clearly meets the requirement of having commanded a high salary in relation to others in his field. The Director abused his discretion by refusing to qualify plaintiff's salary as "high ... in relation to others in the field," by doing so on the ground that plaintiff failed to demonstrate why he had received such a salary. The AAU abused its discretion by entirely ignoring plaintiff's evidence as to the ninth criterion.

**(iv) Whether Plaintiff Meets the Requirement of Having Produced Original Scientific and Scholarly Work, Criterion 8 C.F.R. § 204.5(h)(3)(v)**

█ The fifth criterion listed in the INS regulation reads as follows:

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

8 C.F.R. § 204.5(h)(3)(v). In making the determination that plaintiff did not meet this criterion, the Director considered in his decision only the articles that plaintiff presented before his colleagues at the Korce Hospital.[13] The Director failed to consider, or even make mention of, plaintiff's book on the history of public health, plaintiff's German–Albanian medical dictionary, or plaintiff's study regarding dispensary facilities in "Zeri i Popullit," the largest circulation newspaper in the nation of Albania. As evidenced by plaintiff's receipt of the Medal for Good Service, plaintiff's work on the history of public health clearly was recognized within Albania as being a scholarly work of major significance.

Plaintiff also presented evidence regarding the value of plaintiff's other scholarly contributions to the medical field. Plaintiff submitted a letter of reference signed by both the Director of the Korce Hospital, Dr. Dulellari, and the Chief of the Health Department of Korce, Dr. Mano, stating that plaintiff's work with respect to the dispensary facilities "was of national importance." (Tr. at 91). As to plaintiff's dictionary, plaintiff submitted a letter of reference from Genc Kortsha, President of the American Academy of Industrial Hygiene, stating, *inter alia*, that plaintiff's dictionary is an original work that will provide invaluable assistance to all persons who write or translate from the German language, and that the extensive bibliography of the dictionary encompasses all fields of medicine and has practical value which fills a void in the medical profession. (Tr. at 53). Plaintiff also presents a letter from Lynn Haire, Foreign Language Coordinator of the Ferndale Public Schools, stating that the dictionary is a "major scholarly work" and a

---

**12.** Defendant's motion for summary judgment argues that the amount of plaintiff's Albanian salary converted into American dollars, in relation to American salaries for even non-medical personnel, is so low that it cannot possibly constitute high remuneration. Plaintiff's converted salary is $40.00 per month; the average salary of Albanian doctors is $20.00 per month. The regulation, however, states "significantly high remuneration ... *in relation to others in the field.*" 8 C.F.R. § 204.5(h)(3)(ix) (emphasis added). By this language, the INS must intend that the salary of the alien be judged in relation to others who are in comparable circumstances. The 1990 Amendment clearly contemplates judging an alien's extraordinary ability, or lack thereof, by national standards in cases where a person has not achieved international acclaim. A Japa-

nese doctor, for example, would likely make significantly more than an American doctor if yen is converted to American dollars; this disparity occurs simply because the yen is a stronger currency than the dollar on international currency markets, and bears no relation to the Japanese doctor's value in relation to the American medical community. By the same token, if the Japanese doctor merely makes the same amount as the average doctor in Japan, his salary clearly would not constitute "significantly high remuneration ... in relation to others in the field," despite the fact that the Japanese doctor earns much more than the average American doctor.

**13.** See list at p. 3, *supra*.

"significant practical contribution to scientific education and research." (Tr. at 54).

None of this evidence is even mentioned by the Director. In fact, nowhere in the Director's decision is there any discussion of plaintiff's book on the history of public health, plaintiff's creation of a medical dictionary, or of plaintiff's work with regard to dispensary facilities. The Director's failure to consider all of the relevant evidence submitted by plaintiff constitutes an abuse of discretion. The evidence submitted by plaintiff clearly demonstrates that plaintiff has authored original scientific work of major significance in his field.

**B. The AAU's August 12, 1993 Holdings (i) that Plaintiff Failed to Demonstrate How His Work in the United States Would Relate to His Extraordinary Ability, and (ii) that Satisfaction of Three or More Criteria Listed in 8 C.F.R. § 204.5(h)(3) Does Not Necessarily Establish Extraordinary Ability**

**(i) Whether Plaintiff's Work in the United States is in the Area of His Extraordinary Ability**

■ The AAU, in its decision denying plaintiff's appeal, mentions plaintiff's history of public health, his creation of a dictionary, and his work regarding dispensary facilities but concludes nonetheless that

> [e]ven if the petitioner could be said to have risen to the very top of his field based on these accomplishments, the petitioner has not explained how these accomplishments are related to the practice of medicine at a clinic in Detroit. In view of the foregoing, it cannot be concluded that the petitioner has provided clear evidence that he has the prospect of continuing work in the United States related to the particular area in which he claims to have extraordinary ability.[14]

(Tr. at 3). The AAU's concern that plaintiff will not continue work in the sciences is irrational in light of the clear evidence that plaintiff intends to continue working in the medical profession. In fact, the AAU ac-

knowledges that plaintiff intends and expects to "practice medicine at a clinic in Detroit." (Tr. at 3). As discussed *supra,* the 1990 Amendment requires an alien seeking first preference to demonstrate that they will continue work "in the area of extraordinary ability." 8 U.S.C. § 1153(b)(1)(A)(ii). It does not require the alien to continue work on the specific topic or topics of research for which the alien has previously gained notoriety. The court finds that the AAU abused its discretion by limiting the characterization of plaintiff's field to the narrow topics on which plaintiff has previously done research.

**(ii) Whether Satisfaction of Three or More Criteria Establishes Extraordinary Ability**

The AAU's decision also holds that "[t]he submission of documentation to satisfy three or more of the criteria contained in 8 C.F.R. § 204.5(h)(3) does not necessarily establish eligibility as an alien of extraordinary ability." (Tr. at 4). As exhibit B to his motion for summary judgment, plaintiff submits a letter dated July 30, 1992 from Lawrence Weinig, Acting Assistant Commissioner for Examinations of the INS. The letter is addressed to the NSC Director, James Bailey. In that letter, Weinig provides guidance as to the proper use of the regulations. Weinig writes:

> The evidentiary lists were designed to provide for easier compliance by the petitioner and easier adjudication by the examiner. The documentation presented must establish that the alien is either an alien of extraordinary ability or an outstanding professor or researcher. *If this is established by the [sic] meeting three of the criteria for extraordinary aliens ... this is sufficient to establish the caliber of the alien. There is no need for further documentation on the question of the caliber of the alien.* However, please note that the examiner must evaluate the evidence presented. This is not simply a case of counting pieces of paper.

**14.** The AAU decision notes that plaintiff claims to have "extraordinary ability in the sciences." (Tr. at 3).

Exhibit B to Plaintiff's Motion for Summary Judgment. This letter contradicts the AAU's ruling in this case that the meeting of three criteria is not in and of itself sufficient. Of course, the examiner must evaluate the quality, including the credibility, of the evidence presented to determine if it, in fact, satisfies the criteria.

 As Weinig indicates the criteria were intended to make compliance easier by apprising aliens of the evidence they need to present. It is an abuse of discretion for an agency to deviate from the criteria of its own regulation. Once it is established that the alien's evidence is sufficient to meet three of the criteria listed in 8 C.F.R. § 204.5(h)(3), the alien must be deemed to have extraordinary ability unless the INS sets forth specific and substantiated reasons for its finding that the alien, despite having satisfied the criteria, does not meet the extraordinary ability standard.

### VI. Conclusion

For the foregoing reasons, the court finds that the INS's decision to deny plaintiff's request for classification as an alien of extraordinary ability in the sciences was arbitrary and capricious and constitutes an abuse of discretion.

### ORDER

Therefore, it is hereby **ORDERED** that defendant's motion for summary judgment is **DENIED**.

It is further **ORDERED** that plaintiff's motion for summary judgment is **GRANTED**.

**SO ORDERED.**

### JUDGMENT

This action came on for review before the court, Honorable Paul V. Gadola, District Judge, presiding, and the issues having been duly considered and a decision having been duly rendered,

It is **ORDERED** and **ADJUDGED** that plaintiff is **DECLARED** an alien of extraordinary ability in the sciences under 8 U.S.C. § 1153(b)(1)(A) and that defendant is hereby

**ORDERED** to grant plaintiff's request for a first preference visa under 8 U.S.C. § 1153.

It is further **ORDERED** that the clerk serve a copy of this judgment by United States mail on the counsel for plaintiff and on counsel for defendant.