# United States Court of Appeals for the Fifth Circuit

---

No. 21-20212

---

Bhaveshkumar Amin,

*Plaintiff—Appellant*,

*versus*

Alejandro Mayorkas, *Secretary, U.S. Department of Homeland Security*; Ur M. Jaddou, *Director of U.S. Citizenship and Immigration Services, Acting Director, United States Citizenship and Immigration Services*; Gregory Richardson, *Director, United States Citizenship and Immigration Services, Texas Service Center*; Officer XM1698; United States of America,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-01043

---

Before King, Costa, and Willett, *Circuit Judges*.
Gregg Costa, *Circuit Judge*:

Hoping to draw the world's best and brightest to American shores, the law has long given preferential treatment to highly talented immigrants. *See* Emergency Quota Act of 1921, 42 Stat. 5, § 2(d) (exempting artists and members of "learned profession[s]" from nationality-based immigration quotas). Over the years, these preferences have enabled Nobel laureates,

No. 21-20212

world class athletes, and renowned artists and musicians to live and work in the United States. Recipients include Beatles frontman John Lennon, whose application for classification as an "outstanding person in the arts or sciences" was supported by letters from prominent artists including Andy Warhol. Leon Wildes, John Lennon vs. The USA: The Inside Story of the Most Bitterly Contested and Influential Deportation Case in United States History 69-77 (2016).

This case involves Bhaveshkumar Amin's attempt to obtain the modern version of this preference: an extraordinary ability visa. Amin, a Canadian citizen, is a talented chemical engineer who has made valuable contributions to oil and gas projects. But given the lofty bar for extraordinary ability classifications, we cannot say that the agency acted arbitrarily when it determined that Amin was not "extraordinary" but merely very good.

I

A

The current preference for highly talented immigrants was enacted in 1990, when Congress created a pathway to citizenship for noncitizens with "extraordinary ability in the sciences, arts, education, business, or athletics." 8 U.S.C. § 1153(b)(1)(A). This visa, colloquially dubbed the "Einstein" or "genius" visa, is available to those whose extraordinary ability "has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation." *Id*. Although only a few thousand extraordinary ability visas are awarded each year, they are highly sought after. *See Form 1-140, Immigrant Petition for Alien Worker Number of Petitions and Approval Status for All Countries by Fiscal Year Received and Approval Status,* U.S. Citizenship & Imm. Servs., Dep't of Homeland Sec. (2019), https://www.uscis.gov/sites/default/files/document/data/I140_by_class_

country_FY09_19.pdf (showing that between 2,901 and 8,508 extraordinary ability visas were granted annually from 2009–2019).

Several advantages flow from obtaining an extraordinary ability visa. Applicants for most forms of employment-based immigration must prove that they have a job waiting for them in the United States, and the Department of Labor must certify that their employment will not disadvantage similarly employed Americans. *See* 8 U.S.C. § 1182(a)(5). Extraordinary ability applicants do not need to meet those requirements. 8 C.F.R. § 204.5(h)(5). Also, the priority date of extraordinary ability visas is always current, meaning visa holders avoid the years-long waiting periods that apply to most other employment-based immigration categories. Josh Effron, *Permanent Residency for Immigrants of Extraordinary Ability*, 32 L.A. Law. 12, 13 (2009).

For those seeking the coveted visas, the statute is only the beginning of the framework. Citizenship and Immigration Services (USCIS) further explained the extraordinary ability standard in a notice-and-comment rule. 8 C.F.R. § 204.5(h). The rule defines "extraordinary ability" as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." *Id*. § 204.5(h)(2). This narrow definition reflects the stringency of the "extraordinary ability" standard. After all, a different visa is available to those whose ability is merely "exceptional." 8 U.S.C. § 1153(b)(2).

The regulation also lists the "[i]nitial evidence" applicants must include in their extraordinary ability application. *Id*. § 204.5(h)(3). An applicant can submit proof of a one-time achievement—"a major, international[ly] recognized award" like an Olympic gold medal or Nobel Prize. *Id*. Or an applicant may show that they meet "at least three" of ten listed criteria:

No. 21-20212

(i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

4

8 C.F.R. § 204.5(h)(3). If the listed criteria "do not readily apply to the beneficiary's occupation," an applicant can submit other forms of "comparable evidence." *Id.* § 204.5(h)(4).

An agency memorandum rounds out the documents framing this case. In 2010, USCIS issued a Policy Memorandum amending its Adjudicator's Field Manual[1] to provide guidance to officers assessing extraordinary ability applications. U.S. Citizenship & Imm. Servs., Dep't of Homeland Sec., PM-602-0005.1, Evaluation of Evidence Submitted with Certain Form I-140 Petitions; Revisions to the *Adjudicator's Field Manual (AFM)* Chapter 22, *AFM* Update AD11-14, at 1 (2010) (Policy Memo). In the memo, the agency adopted the two-step approach to adjudication outlined in *Kazarian v. USCIS*, 596 F.3d 1115 (9th Cir. 2010). Policy Memo, at 3. At the first step, the agency assesses whether the applicant submitted the required "initial evidence" listed in the regulation by a preponderance of the evidence. *Id.* at 5. The agency then conducts a "final merits determination" to determine whether, as a whole, the evidence is sufficient to demonstrate that the applicant meets the "required high level of expertise." *Id.*

B

With this foundation in mind, we turn to the case at hand. Amin is a project manager in the field of chemical engineering. He has worked for oil

---

[1] The Adjudicator's Field Manual is a "comprehensive 'how to' manual detailing policies and procedures for all aspects of [USCIS's] Adjudications Program." U.S. Citizenship & Imm. Servs., Dep't of Homeland Sec., Adjudicator's Field Manual § 1.1. USCIS is in the process of migrating the Adjudicator's Field Manual and other agency policy documents to a centralized, online repository called the Policy Manual. *Policy Manual*, U.S. Citizenship & Imm. Servs., Dep't of Homeland Sec. (Oct. 29, 2021), https://www.uscis.gov/policy-manual (describing the transition and linking to the new database).

companies including Enursul and Husky Energy, and contributed to novel inventions, including a portable sulfur-forming unit, modularized well pads, and a high-efficiency drill rig.

Amin applied for an extraordinary ability visa in January 2020. He did not claim to have won a major international award. Instead, he asserted that he met four of the ten regulatory criteria: judging the work of peers (criterion four); making original contributions of major significance to his field (criterion five); leadership in distinguished industry organizations (criterion eight); and enjoying a high salary relative to his peers (criterion nine). A USCIS adjudicator denied Amin's application, finding that he only satisfied criterion four.

Amin did not appeal the decision to higher agency authority. Instead, he challenged the denial in federal district court. After Amin filed this lawsuit, USCIS's field office agreed to reconsider his application. Upon second review, the agency adjudicator again denied Amin's application. This time, the adjudicator found that he met three criteria: judging the work of others, holding leadership roles, and commanding a relatively high salary, but still concluded Amin did not show original contributions of major significance. The adjudicator acknowledged that Amin played an "important role" for his employers but found that he failed to show a significant impact on the field of chemical engineering as a whole. Still, because Amin satisfied three regulatory criteria, the adjudicator then considered whether the record established his sustained acclaim and status at the top of his field. The adjudicator concluded that he did not. Again, the agency credited Amin's contribution to his employers but found evidence of his impact on the field lacking.

Amin then amended his federal complaint, and the litigation continued. The district court granted the government's motion for summary

judgment.  It credited the agency's "thorough reasoning for why the Service came to the conclusions it did for each criteria" and explained that "[m]erely disagreeing with the Service's conclusions about the evidence is insufficient to make them arbitrary and capricious."  It further held that Amin knew the agency used the two-step framework and did not show that approach was invalid.

## II

As a threshold matter, we consider whether Amin's claim is unreviewable because he failed to appeal the visa denial to USCIS's Administrative Appeals Office before filing suit.  The Administrative Procedure Act, under which Amin brought suit, allows judicial review only of final agency actions.  *See* 5 U.S.C. § 704.  Agency action like the visa denial here is final unless administrative appeal is "expressly required by statute" or the agency "requires [exhaustion] by rule and provides that the action meanwhile is inoperative."  *Id.*; *see Darby v. Cisneros*, 509 U.S. 137, 146–47 (1993) (explaining that courts cannot require administrative appeal when not required by statute or regulation).  Our precedent treats the APA's judicial review provisions as limits on subject matter jurisdiction.[2] *People's Nat'l*

---

[2] This view may be out of step with recent Supreme Court rulings clarifying that a statute is "jurisdictional" only if Congress says so.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006); *see also Davis*, 139 S. Ct. at 1849 (holding that the exhaustion requirement for Title VII suits is not jurisdictional).  The APA does not state that its finality requirement is jurisdictional, so other circuits have held that it is not.  *See, e.g.*, *Jama v. DHS*, 760 F.3d 490, 494 (6th Cir. 2014); *Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 125 n.11 (3d Cir. 2012); *Lee v. USCIS*, 592 F.3d 612, 619 (4th Cir. 2010); *Sharkey v. Quarantillo*, 541 F.3d 75, 84 (2d Cir. 2008); *Nkihtaqmikon v. Impson*, 503 F.3d 18, 33 (1st Cir. 2007); *Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006).

We recently overruled precedent treating a requirement in another area of law as jurisdictional, explaining that the Supreme Court's attempts to confine the jurisdictional category "fundamentally changes" the analysis of whether a requirement affects a court's

*Bank v. Off. of Comptroller of Currency*, 362 F.3d 333, 336 (5th Cir. 2004).  We thus must raise the issue of Amin's noncompliance on our own initiative. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1834, 1849 (2019) (noting that "[u]nlike most arguments, challenges to subject-matter jurisdiction" may be raised at any time by the parties and "courts must consider them *sua sponte*").

The jurisdictional question thus turns on whether Amin was required to appeal the visa denial to the agency's Appeals Unit.  USCIS regulations provide that "[t]he denial of a petition for classification [as a noncitizen with extraordinary ability] shall be appealable to the Associate Commissioner for Examinations."[3]  8 C.F.R. § 204.5(n)(2).  At first glance, the word "shall" seems to mandate exhaustion.  *See Murphy v. Smith*, 138 S. Ct. 784, 787 (2018) ("[T]he word 'shall' usually creates a mandate.").

But we do not read a word in isolation; we must look at the "specific context in which that language is used."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).  If the regulation stated that a classification "shall be appealed," then exhaustion would be mandatory.  *Cf. Dresser v. Meba Med. & Benefits Plan*, 628 F.3d 705, 710 (5th Cir. 2010) (finding administrative appeal mandatory when regulation said that the NTSB "shall review" initial agency decisions).  But this regulation does not.  It provides that the classification "shall be *appealable*."    8 C.F.R. § 204.5(n)(2) (emphasis added).  The most natural reading, then, is that the regulation allows but does not mandate appeals from extraordinary ability visa denials.  *See Appealable*,

---

authority to hear a case. *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787 (5th Cir. 2021) (overruling precedent holding that the six-month time limit for bringing a limitation of liability action is jurisdictional).  But because we conclude there is no mandatory exhaustion requirement for the visa denial challenge here, we need not consider whether our precedent treating the finality requirement as jurisdictional survives.

[3] The Associate Commissioner for Examinations delegated this authority to USCIS's Administrative Appeals Unit.  8 C.F.R. § 103.3(a)(iv).

Black's Law Dictionary (11th ed. 2019) (defining "appealable" as "capable of being appealed"). It would not make sense to use the permissive "may" in this context; "may be appealable" would leave doubt about whether an applicant could in fact appeal up the agency chain. "Shall be appealable" is thus best read as permitting but not requiring applicants to seek further agency review before undergoing the delay and expense of a federal lawsuit.

This reading is bolstered by comparing the regulation to immigration laws that unambiguously require exhaustion before judicial review. For instance, the Immigration and Nationality Act says that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d); *see Moreira v. Mukasey*, 509 F.3d 709, 713 (5th Cir. 2007) (declining to review removal order because BIA appeal was still pending). Similarly, a USCIS regulation states that an agency denial of a naturalization application "shall not be subject to judicial review until the applicant has exhausted those administrative remedies available to the applicant under section 336 of the [INA]." 8 C.F.R. § 336.9(d). The lack of similar language here confirms that the agency did not intend the same result. *See Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 484–85 (1996) (concluding that the presence of specific language in one statute and absence of it in another meant that Congress did not intend to create the same remedies through both).

Through section 704, Congress carefully "limited the availability of the doctrine of exhaustion [in APA cases] to that which the statute or rule clearly mandates." *Darby*, 509 U.S. at 146. Because 8 C.F.R. § 204.5(n)(2) does not clearly require administrative appeal, we have jurisdiction despite Amin's failure to exhaust administrative remedies.

No. 21-20212

III

The APA requires us to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). APA cases are often resolved at summary judgment because whether an agency's decision is arbitrary and capricious is a legal question that the court can usually resolve on the agency record. *See Univ. Med. Ctr. Of S. Nevada v. Shalala*, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999).

Amin raises two procedural challenges to the framework the agency used to evaluate his application. First, he argues that the Policy Memo is "not in accordance with law" because it conflicts with the regulation. Second, he asserts that the Policy Memo is invalid because it was issued without notice and comment. Because these questions overlap, we address them together.[4]

Recall that the Policy Memo provides for a two-step review process. First, the agency determines whether the applicant's evidence meets the parameters of the regulatory criteria. POLICY MEMO, at 3. If the applicant proved at least three, the agency conducts an "overall merits determination" to decide whether the applicant is one of the few at the top of their field. *Id.* Amin asserts that once an applicant meets three of the ten regulatory criteria,

---

[4] The government argues that Amin forfeited his procedural challenge to the Policy Memo by failing to include it in his complaint. Forfeiture generally does not apply when a claim is "raised or decided" in the district court. *FDIC v. Mijalis*, 15 F.3d 1314, 1326 (5th Cir. 1994). Amin did not forfeit his procedural challenge because the issue was briefed below, and the district court ruled on it.

the regulation shifts the burden to the government to explain why the applicant has not demonstrated extraordinary ability.[5]

The agency's reading is consistent with the governing statute and regulation.[6]  The regulation does not say that meeting the regulatory criteria presumptively qualifies an applicant for a visa.  It addresses what evidence must "accompany[]" a petition.  8 C.F.R. § 204.5(h)(3).  As most college applicants learn, submitting all the required application materials does not guarantee a favorable decision.  What is more, the regulation labels the categories "*Initial* evidence" and states that applicants must submit evidence of "*at least* three" criteria.  *Id.* (emphasis added).  This word choice contemplates another step beyond submitting the enumerated evidence: if satisfying three criteria were enough, why would the agency invite proof of more?  As we read it, the regulation's "initial evidence" provision provides color to the statute's "extensive documentation" requirement.  *See* 8 U.S.C. § 1153(b)(1)(A).  And the final merits determination speaks to the statute's

---

[5] The Eastern District of Michigan took this approach in *Buletini v. INS*, 860 F. Supp. 1222 (E.D. Mich. 1994).  Amin claims that USCIS uniformly followed *Buletini* prior to issuing the Policy Memo in 2010.  But he cites only a 1993 letter from a former INS Acting Assistant Commissioner for Examinations and an Illinois district court case noting the agency's failure to explain why an applicant's evidence did not meet the extraordinary ability standard.  He does not contend that USCIS ever promulgated a rule or adopted a uniform policy embracing *Buletini*.

[6] We defer to an agency's interpretation of its own regulations when the regulation's text is "genuinely ambiguous," and the "character and context of the agency's interpretation entitles it to controlling weight."  *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019).  If those conditions are met, the agency's view controls unless "plainly erroneous or inconsistent with the regulation."  *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  We need not decide whether the Policy Memo is entitled to controlling weight because the government is not arguing that it is.  And because we conclude that the agency's approach is consistent with the statute and regulation, the result is the same as if we had deferred.  *See Edelman v. Lynchburg Coll.*, 535 U.S. 106, 114 (2002) (explaining that there is "no point" in deferring when the agency's view is "the position [the court] would adopt . . . interpreting the [regulation] from scratch").

requirement of "extraordinary ability which has been demonstrated by sustained national or international acclaim." *Id.* Amin's view is unmoored from the statute in not requiring an applicant to prove that essential requirement.

For largely these same reasons, the Policy Memo is valid without notice and comment. An agency must provide the public with notice and an opportunity to comment before it issues a final, legislative rule. 5 U.S.C. § 553(b), (c). Notice and comment is not required, however, for "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.* § 553(b)(A). To determine whether a rule is legislative, we consider "whether the rule (1) 'impose[s] any rights and obligations' and (2) 'genuinely leaves the agency and its decision-makers free to exercise discretion.'" *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015) (quotations omitted).

The Policy Memo does not impose any obligations on visa applicants. The statute and regulation require applicants to prove their extraordinary ability and to provide "extensive documentation" of the type listed in the regulation. The Policy Memo does not require anything more; it merely clarifies the order in which agency adjudicators evaluate the evidence. *Contrast Phillips Petroleum Co. v. Johnson*, 22 F.3d 616, 618–20 (5th Cir. 1994) (concluding that agency document that "developed new criteria" for valuing natural gas liquid products was legislative rather than interpretive).

Precedent confirms that agency documents like the challenged field manual can be issued without notice and comment. We held that a Veterans Administration manual similar to this one lacked the force of law. *United States v. Harvey*, 659 F.2d 62, 64–65 (5th Cir. Unit B 1981). Both manuals are internal publications intended to provide guidance to employees implementing agency policies. *Compare id.* at 63 (describing the VA manual

as "an internal agency publication issued to employees engaged in loan servicing operations to provide procedural information and policy guidelines"), *with* POLICY MEMO, at 1 (explaining that the purpose of the amendment to the AFM is to ensure that extraordinary ability applications are adjudicated under a consistent standard). And both are phrased in permissive language. *Harvey*, 659 F.2d at 64; POLICY MEMO, at 5.

Other courts have applied the same logic to conclude that other portions of this USCIS manual do not create enforceable rights. *See, e.g.*, *Diaz v. USCIS*, 499 F. App'x 853, 855 (11th Cir. 2012) (per curiam) (finding the manual's direction to immigration officers to allow I-130 petitioners to explain material inconsistencies in their applications nonlegislative); *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 221–22 (E.D.N.Y. 2021) (finding the manual's determination that certain civil documents from Yemen are insufficient to establish claimed familial ties nonlegislative). Because the Policy Memo does not create legal rights or obligations, it is not a legislative rule subject to the notice-and-comment requirement.

IV

With the procedural questions decided, we reach Amin's substantive challenge. Amin alleges that USCIS acted arbitrarily at both steps of its analysis. Because the agency considered Amin's evidence and explained why it does not meet the regulatory standard, we disagree.

To survive an arbitrary and capricious challenge, the agency must "articulate a satisfactory explanation for its action including 'a rational connection between the facts found and the choice made.'" *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quotation omitted). Agency action is arbitrary and capricious if the agency relied on factors that Congress did not intend it to consider, failed to consider an important aspect of the problem, or offered an explanation counter to the

evidence. *Id.* This inquiry is "narrow." *Id.* at 43. Our task is merely to ask whether the agency considered the relevant facts and articulated a satisfactory explanation for its decision; we cannot substitute our judgment for the agency's. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019).

When the arbitrary and capricious standard is invoked to question the factual basis for an agency's conclusions, our review is functionally the same as the "substantial evidence" test used to evaluate formal agency action under 5 U.S.C. § 706(2)(E). As then-Judge Scalia explained, "[w]hen the arbitrary and capricious standard is performing th[e] function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense." *See Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984).

A

We first consider the agency's determination of how many of the ten regulatory criteria applied to Amin.[7] The parties agree that Amin's evidence satisfies three: judging the work of others, holding a leading role in industry organizations, and earning a high salary relative to peers. Amin objects to USCIS's determination that he did not prove a fourth criterion: "original scientific . . . or business-related contributions of major significance in the field." 8 C.F.R. § 204.5(h)(3)(v).

---

[7] Because the agency determined Amin proved three of the criteria, it proceeded to the final merits determination. Still, we review the agency's step one analysis because if Amin satisfies a fourth regulatory criterion, he has a stronger overall case for extraordinary ability at the second step.

Amin identifies three accomplishments that he believes are contributions of major significance to the field of chemical engineering. First, he states that he was "instrumental" in designing the world's first portable sulfur-forming units. To show that his design impacted the field, Amin submitted a letter from a former Enersul executive stating that the innovation was a response to an industry need and earned Amin a promotion. The agency considered the letter but gave it little weight because it did not explain the design's impact beyond Enersul.

Amin also cites his contributions to the first modularized well pads in the Alberta Oil Sands. He offered several letters and news articles describing the project, including a letter from a coworker calling the invention "industry leading." Notably, Amin included a letter from a project manager at the China National Offshore Oil Corporation, describing how the company "utilized Mr. Amin's design and adopted similar strategies to build modules in China . . . but that it had so far proved unsuccessful at achieving the same efficiency."

This letter is Amin's best evidence because it addresses the impact of his work beyond his own employer. Still, the agency found the letter insufficient because it did not show widespread replication of the design. Amin maintains that the fact that no other company has replicated his success underscores how path-making his invention is. We do not doubt the value of Amin's invention. But the regulation demands "major" contributions to the field, 8 C.F.R. § 204.5(h)(3)(v), and Amin cites no case where an invention that was not adopted by even one industry actor met this standard. *Cf. Visincaia v. Beers*, 4 F. Supp. 3d 126, 134 (D.D.C. 2013) (upholding agency denial on criterion five because support letters claiming generally that dancer's technique was being widely used by competitors did not "provide[] specific information relating to the impact of [applicant's] dance technique on the field as a whole").

Finally, Amin cites his contributions to a high-efficiency, "walking" drill rig capable of being moved from one well pad to another without being disassembled. In an amended letter of support, Amin's colleague Mihai Ion states that he and Amin collaborated on the "industry first" design. Amin also provided a *Calgary Herald* article stating that the rig improved Husky's drilling times, and an online article from industry publication JWN Energy noting Husky's new machine.

Amin is correct that the agency's denial did not specifically address his contributions to the drill rig. Total failure to consider important evidence is a basis for setting aside agency action. *Fritiofson v. Alexander*, 772 F.2d 1225, 1234, 1237 (5th Cir. 1985) (finding the EPA acted arbitrarily when it failed to analyze the cumulative impacts of a project on wetlands). But while USCIS did not explicitly discuss the drill rig, it did acknowledge Ion's letter and address the DA2 Well Pad program, of which the rig was a part. And any error on this point was harmless because Amin's evidence does not show that anyone beyond his company used (or even attempted to use) the rig design. *See Worldcall Interconnect, Inc. v. FCC*, 907 F.3d 810, 818 (5th Cir. 2018) ("[W]e will not reverse an agency action due to a mistake where that mistake 'clearly had no bearing on . . . the substance of the decision reached.'" (quoting *Sierra Club v. U.S. Fish & Wildlife Serv.*, 245 F.3d 434, 444 (5th Cir. 2001))).

USCIS considered Amin's evidence and credited his accomplishments but determined that he did not meet his burden of proving that his designs were of "major significance" to his field. Because Amin does not show that the agency failed to consider evidence or explain its reasoning, the agency's determination on criterion five was not arbitrary.

No. 21-20212

B

We next consider Amin's challenge to the ultimate determination that he did not show extraordinary ability. The agency looked at each of the criteria Amin satisfied and explained why his accomplishments under each merited little weight in the overall assessment. The agency's overall conclusion is familiar: although Amin provided great value to his employers, the record does not demonstrate by a preponderance of the evidence "that either the quality or quantity of [his] work is indicative of sustained national or international acclaim" or that his "achievements have been recognized in the field of expertise."

That underlying standard—whether Amin showed extraordinary ability—combines with our deferential arbitrary-and-capricious review to create a daunting obstacle to the relief Amin seeks. Extraordinary ability is such an elite level of accomplishment that recognizing it necessarily entails a judgment call. Arguing that the agency was compelled to find extraordinary ability is a bit like saying that the only possible grade on an exam was an A+.

Amin nonetheless maintains that his leadership in industry organizations is *ipso facto* evidence of his recognition as a leader in his field. He argues the same for his $342,000 salary and peer review experience. This argument cannot be correct. If meeting the regulatory criteria was enough to establish one's acclaim, there would be no step two of the analysis. That second step is the ultimate statutory inquiry of whether the applicant has "extraordinary ability" as "demonstrated by sustained national or international acclaim." 8 U.S.C. § 1153(b)(1)(A). If the three criteria Amin proved—leadership in an industry organization, a high salary, and peer review experience—are enough to automatically show that acclaim, then the "extraordinary ability" visa will look less like an Einstein visa and more like a Lake Wobegon one.

No. 21-20212

The agency properly considered Amin's accomplishments but found them insufficient.  Its determination reflects the reasoned consideration the APA requires.

* * *

The judgment is AFFIRMED.